# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| PHYSICIANS HEALTHSOURCE, INC., an Ohio corporation, individually and as the representative of a class of similarly-situated persons, ) ) ) ) | |
| Plaintiff, ) ) | Case No.: 12-cv-5105 |
| v. ) ) | Hon. Joan B. Gottschall |
| A-S MEDICATION SOLUTIONS LLC, JAMES BARTA, WALTER HOFF AND JOHN DOES 1-10, ) ) ) ) | |
| Defendants. | |

## PLAINTIFF'S MEMORANDUM OF LAW
## IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

Brian J. Wanca
Ryan M. Kelly
ANDERSON + WANCA
3701 Algonquin Road, Suite 760
Rolling Meadows, IL  60008
Telephone:  847/368-1500

Plaintiff, Physicians Healthsource, Inc. ("PHI"), submits this Memorandum of Law in Support of its Motion for Class Certification, pursuant to Fed. R. Civ. P. 23(a) and (b)(3).

## Introduction

The Telephone Consumer Protection Act of 1991 ("TCPA" or "Act"), 47 U.S.C. § 227(b)(1)(C), forbids the use of "any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement," unless certain exceptions are met. The TCPA defines an "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." *Id.* § 227(a)(5). The TCPA creates a private right of action for any person or entity that receives an advertisement in violation of the Act and provides for statutory damages in the amount of $500 for each violation as well as injunctive relief against future violations. *Id.* § 227(b)(3)(A)–(B). Additionally, the TCPA provides treble damages may be assessed if in the Court's discretion the defendant "willfully or knowingly" violated the act. *Id.* § 227(b)(3).

The Federal Communications Commission ("FCC") has authority to prescribe regulations to implement the TCPA. *Id.* § 227(b)(2); *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012) (the Act directs the FCC to prescribe implementing regulations). The regulations define "sender" as "the person or entity on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement." 47 C.F.R. § 64.1200(f)(10). In addition, the FCC has issued regulations requiring specific "opt-out" language on fax advertisements in order to advise recipients of how to stop receiving such faxes. 47 C.F.R. § 64.1200(a)(4)(iii). The FCC's regulations regarding opt-out language are clear – fax advertisements sent pursuant to an established business relationship ("EBR"), or pursuant to

1

"prior express invitation or permission," must contain the proper opt-out language. *Id.* § 64.1200(a)(4)(ii) & (iv).

From February 10, 2010, to February 28, 2010, Defendants A-S Medication Solutions LLC ("A-S") and Walter Hoff ("Hoff") (collectively, "Defendants"), successfully sent 11,422 facsimiles advertising the availability and quality of A-S's pharmaceutical products and services. The fax image (the "Fax") was sent to PHI and the putative class in a fax blast conducted by Defendants between February 10, 2010, and February 28, 2010, and was received by PHI on February 18, 2010, and is attached hereto as Exhibit 1. (First Am. Compl., Doc. 38-1, Page ID 263). The Fax contains no opt-out notice. (*Id.*) PHI seeks to certify the following Class:

> All persons or entities who were successfully sent the Fax providing "A-S Medication Solutions LLC, Quality Service Guaranteed," and "Ask about our new PedigreeRx Solution!," between February 10, 2010, and February 28, 2010.

There are four class-wide questions remaining to be decided on the merits: (1) whether the Fax is an "advertisement" as defined by the TCPA, 47 U.S.C. § 227(a)(5), and the FCC regulations, 47 C.F.R. § 64.1200(f)(1); (2) whether Defendants are "senders" of the Fax pursuant to FCC regulations, 47 C.F.R. § 64.1200(f)(10); (3) whether Defendants "willfully or knowingly" violated the TCPA, allowing the Court to increase statutory damages from the automatic $500 per violation to $1,500 per violation and the scope of injunctive relief; and (4) whether the retroactive waiver of 47 C.F.R. § 64.1200(a)(4)(iv) granted to A-S by the Consumer and Governmental Affairs Bureau of the FCC applies to this private right of action.

The Court need not, and in fact should not, decide these questions now. It need only determine whether the "*answers*" to these questions are "apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). As argued below, these questions can *only* be answered class-wide, and doing so will resolve the entire case. That is why "[c]lass certification is normal" under the TCPA: "because the main questions, such as whether a

given fax is an advertisement, are common to all recipients." *Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 683 (7th Cir. 2013).[1]

## Factual Background[2]

A.   **A-S and Sav-Rx enter into Asset Purchase Agreement with Allscripts, LLC.**

On March 2, 2009, A-S and Sav-Rx, LLC ("Sav-Rx") entered into an Asset Purchase Agreement ("APA") with Allscripts, LLC ("Allscripts"). (APA at 1, 5; Hoff Dep. I at 15, 16). Allscripts was engaged in the business of prepackaged medication fulfillment solutions, which included medications and software for dispensing and inventory control. (*Id*. at 5). A-S "wanted to get into the medication dispensing business," and thought purchasing this portion of Allscripts' business would be a good start. (Hoff Dep. I at 16).

B.   **A-S transmits the Fax to PHI and the Putative Class.**

Defendant Hoff has been the chief executive officer of A-S since March 2009. (Hoff Dep. I at 5, 6). Hoff is one of the owners of A-S; he is in charge of the production facility,

---

[1] *E.g.*, *Holtzman v. Turza*, 2009 WL 3334909 (N.D. Ill. Oct. 14, 2009) (Gettleman, J.), *aff'd*, 728 F.3d 682; *Chapman v. Wagener Equities, Inc.*, 2014 WL 540250 (N.D. Ill. Feb. 11, 2014) (Tharpe, J.), *app. denied*, 747 F.3d 489 (7th Cir. 2014) (Posner, J.); *Bridgeview Health Care Ctr., Ltd., v. Clark*, 2011 WL 4628744 (N.D. Ill. 2011) (Valdez, J.); *CE Design, Ltd. v. Cy's Crabhouse N., Inc.*, 259 F.R.D. 135 (N.D. Ill. 2009) (Kennelly, J.); *Creative Montessori Learning Ctrs. v. Ashford Gear, LLC*, No. 09 CV 3963, 2011 WL 3273078 (N.D. Ill. July 27, 2011) (certifying class), 662 F.3d 913 (7th Cir. 2011) (vacated and remanded), 2012 WL 3961307 (N.D. Ill. Sept. 10, 2012) (certifying class) (Gettleman, J.), *app. denied*, 12-8036, Order (Oct. 11, 2012); *Reliable Money Order, Inc., v. McKnight Sales Co., Inc.*, 281 F.R.D. 327 (E.D. Wis. 2012), *aff'd,* 704 F.3d 489 (Jan. 9, 2013); *Targin Sign Sys., Inc. v. Preferred Chiropractic Ctr., Ltd.*, 679 F. Supp. 2d 894 (N.D. Ill. 2010) (Shadur, J.).

[2] The attached Appendix of Exhibits contains the following: Facsimile at issue (the "Fax"), Exhibit 1; Expert Report of Robert Biggerstaff ("Biggerstaff Report"), Exhibit 2; Deposition of Brian Moffett (Dec. 4, 2015) ("Moffett Dep."), Exhibit 3; Deposition of Marcello Barth (May 12, 2015) ("Barth Dep."), Exhibit 4; Deposition of Walter Hoff (June 9, 2015) ("Hoff Dep. I"), Exhibit 5; Ex. 6, Deposition of Walter Hoff (Sept. 25, 2015) ("Hoff Dep. II"), Exhibit 6; Deposition of Lauren McElroy (June 18, 2015) ("McElroy Dep."), Exhibit 7; Asset Purchase Agreement between A-S Medication Solutions, Inc., Sav-Rx, LLC and Allscripts, LLC (March 2, 2009) ("Asset Purchase") (executed Agreement w/o attachments) (to be filed under seal), Exhibit 8; Declaration of Dr. John Ruch ("Ruch Decl."), Exhibit 9; Anderson + Wanca Firm Resume ("A+W Firm Resume"), Exhibit 10; Defendants' Supplemental Answers to Plaintiff's First Set of Interrogatories, Nos. 4 and 8 ("Defs.' Suppl. Interrog. Resp."), Exhibit 11.

purchasing and pricing, client relationships, the A-S sales force, legal, regulatory, and IT. (*Id*. at 7, 9, 10).

Marcello Barth ("Barth") has been employed by A-S since 2009; prior to that, from 1992 to 2009, he was employed by both Mysis Healthcare Solutions (a predecessor of Allscripts), and then Allscripts. (Barth Dep. at 5-7). Barth is a programmer on internal systems at A-S, including the AlphaServer 4100 ("Alpha"). (Barth Dep. at 11; Hoff Dep. I at 13; Hoff Dep. II at 6, 7). Alpha is the software system used by all departments at A-S. (Barth Dep. at 11; Hoff Dep. I at 31). A-S started using Alpha following the APA. (Hoff Dep. I at 14). Alpha maintains business contact information for all of A-S customers. (Hoff Dep. II at 9)

Lauren McElroy ("McElroy") was employed by A-S from August 2009 to June 2011 as vice president of marketing. (McElroy Dep. at 10, 11; Hoff Dep. I at 25). McElroy reported to Hoff. (*Id*. at 11). Among McElroy's job responsibilities were the creation of fax templates for fax blasts. (*Id*. at 10-12, 117). McElroy designed the Fax at issue. (*Id*. at 48). McElroy testified Hoff was also involved in designing the Fax – "he just told me what to write, and I wrote it." (*Id*. at 49).

Zetafax is a software program that is used to send and receive faxes. (Hoff Dep. I at 7, 8). Zetafax was acquired by A-S as part of the APA. (*Id*. at 30). Barth first became aware of the Zetafax system at the time of the APA. (Barth Tr. at 14). Barth was responsible for receiving the Zetafax server from Allscripts and setting it up; he was not responsible for maintaining the Zetafax server while it was owned by Allscripts. (*Id*. at 16-17). Barth testified he "got it [Zetafax] running and queued up some jobs." (*Id*. at 13). To Hoff's knowledge, Barth was the only person at A-S capable of using the Zetafax software. (Hoff Dep. I at 37-38). The Fax was sent from the A-S server using Zetafax. (Defs.' Supp. Interogg. Resp., No. 8)

4

PHI received the Fax on February 18, 2010. (Ruch Decl., ¶ 4; Biggerstaff Report, ¶¶ 17, 18). Hoff testified he "approved" sending the Fax. (Hoff Dep. II at 35). In addition, in a February 10, 2010 email, McElroy stated to Barth: "Walter [Hoff] says Good to Go! Start sending them out and let me know when the list is complete." (Barth Dep., Ex. 2 (AS006495); McElroy Dep. 51-52, 87 Ex. 3, 15 (A-S 0026). The "list" referenced in this email is the list McElroy provided to Barth via YouSendIt. (McElroy Dep. at 52, Ex. 3 (A-S 0029-0030). Barth similarly testified the target list for the Fax was provided to him by McElroy. (Barth Dep. at 25, 30, 36; Ex. 2 (AS006494). Barth testified the list for the Fax was on an Excel file, which had a substantial amount of information on it, which he "cleaned up," and what was left was the company and the fax number -- "everything else I got rid of." (*Id*. at 31-32). Barth testified he was aware of only one time when the Alpha system was not used by A-S to generate a fax list, and that was when the Fax was transmitted. (*Id*. at 23-24). Hoff similarly testified that Zetafax was used only one time, and that was to send the Fax in February 2010. (Hoff Dep. I at 31, 32).

      C.      **A-S fails to obtain prior express invitation or permission to send the Fax.**

Brian Moffett ("Moffett") has worked for Allscripts for 21 years. (Moffett Dep. at 6). Since 2010, Moffett has been the director of product support at Allscripts; prior to that he was senior manager of technical support. (*Id*. at 6, 7). Moffett testified as Allscripts' corporate representative. (*Id*. at 12). Allscripts keeps track of its customers through a CRM product called Salesforce.com. ("Salesforce"), which Allscripts has been using since 2006. (*Id*. at 9-10).

Hoff testified A-S acquired PHI's fax number not from Alpha but from the Allscripts Salesforce database, and that Allscripts provided A-S access to the Salesforce database for "a short time," wherein A-S could log in and run reports. (Hoff Dep. I at 18; Hoff Dep. II at 15-16, 18-19). McElroy also testified A-S had access to the Salesforce system, via a login and password, although McElroy testified she never accessed the SalesForce system. (McElroy Dep.

5

at 119, 171-72, 182). McElroy testified she was aware that as early as 2010, A-S was sending fax transmissions independent of any involvement from Allscripts. (*Id*. at 165).

Hoff was shown an email from McElroy to Barth dated February 1, 2010 (Hoff Dep. II, Ex. 4; AS006494). Hoff testified the fax numbers on that list came from the Allscripts' Salesforce database and further, that upon receiving this data, A-S did nothing to contact any of the recipients of the Fax to ask for permission because "we believe we had consent as part of our continuing relationship [with Allscripts]." (Hoff Dep. II at 26). When asked specifically for evidence that PHI provided express invitation or permission to A-S to send fax advertisements, Hoff testified PHI "gave their permission to Allscripts and we were a continuation of the Allscripts business," and that "Allscripts had policies to obtain consent." (*Id*. at 17-19). Hoff testified PHI was never a customer of A-S. (*Id*. at 18). When asked "[w]ould it be accurate to say that A-S never directly contacted the target list that generated off the Salesforce database as provided by Allscripts to seek prior express invitation or permission to send fax advertisements," Hoff answered "[w]e didn't need to. We were part of Allscripts' joint marketing arrangement." (*Id*. at 22). Hoff further testified he did not "believe" that A-S contacted PHI prior to the transmission of the Fax to ask for permission. (*Id*. at 23).

D.  **A-S successfully transmits 11,422 faxes.**

PHI's expert, Robert Biggerstaff ("Biggerstaff"), has an engineering degree from Clemson University and is a certified computer forensic examiner and a member of the International Society of Forensic Computer Examiners. (Biggerstaff Report at ¶¶ 4, 5). Biggerstaff has extensive experience in analyzing computer records in TCPA claims. (*Id*. at ¶ 6). Biggerstaff reviewed the following materials in generating his report in this case: (a) media containing forensic hard drive images received December 11, 2013, from Plaintiff's counsel

Ryan Kelly, which was produced by A-S pursuant to the Agreed Protective Order Regarding Computer Forensic Discovery (Doc. 56) entered in this case; (b) Comcast call detail records (CDR) records in Excel file "Final 2010.xlsx"; (c) discovery production Excel file "Fax Number List 090413.xlsx," Bates' number AS005891-AS006224); (d) E-mails produced in discovery (Bates' stamp AS-0026-0039.pdf); and (e) a copy of the Fax received by Plaintiff. (*Id*. at ¶ 10).

Within the hard drive image, Biggerstaff located the installation of the Zetafax fax broadcasting software, which also contained the Zetafax log (FAX.LOG). (*Id*. at ¶ 15). The Zetafax log shows a transmission to (513) 922-2009 (PHI's fax number) on February 18, 2010, received without error on February 18, 2010, at approximately 3:58 a.m. (*Id*. at ¶¶ 17, 18). Biggerstaff matched this transmission to Comcast call detail records confirming the transmission to PHI of the Fax on February 18, 2010. (*Id*. at ¶ 19). Biggerstaff found that the fax transmission to PHI's fax number on February 18, 2010, was part of a larger block of transmissions that began on February 10, 2010, and ran continuously for 18 days, until February 28, 2010. (*Id*. at ¶ 22). This broadcast contained records of 15,669 total fax transmissions to 15,666 unique fax numbers, a total of which 11,422 transmissions are documented by the Zetafax log as fully received error-free transmissions. (*Id*.). Biggerstaff also reviewed Excel file "Fax Number List 090413.xlsx," produced by A-S, which has 15,663 rows of data plus one header row. (*Id*. at 24). Biggerstaff found that when the contents of this file are compared to the contents of the Zetafax log for the Fax broadcast, it reveals, "to a very high degree of certainty," that this file represents the target list of fax numbers used for the "Fax" broadcast. (*Id*. at ¶ 25).

### The TCPA and its opt-out requirement

In order to sustain a defense based on EBR, among other requirements, is that the fax at issue must contain an opt-out notice that complies with FCC regulations. 47 C.F.R. §

7

64.1200(a)(4)(ii). Similarly, a fax sent with prior express invitation or permission must also have a compliant opt-out notice. *See* 47 C.F.R. § 64.1200(a)(4)(iv) ("[A] facsimile advertisement that is sent to a recipient that has provided prior express invitation or permission to the sender must include an opt-out notice that complies with the requirements in paragraph (a)(4)(iii) of this section.")

On October 30, 2014, the FCC reiterated that <u>all</u> fax advertisements, even those sent with prior express invitation or permission, are required to have an opt-notice that complies with regulatory requirements. *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991; Junk Fax Prevention Act of 2005; Application for Review filed by Anda, Inc.; Petitions for Declaratory Ruling, Waiver, and/or Rulemaking Regarding the Commission's Opt-Out Requirement for Faxes Sent with the Recipient's Prior Express Permission*, CG Docket Nos. 02-278, 05-338, Order, FCC 14-164 (rel. Oct. 30, 2014) ("Opt-Out Order"), at ¶¶ 19–20. Although it upheld the validity of the regulation, the FCC found that its notice of proposed rulemaking in 2005 and a footnote in the 2006 order issuing the regulation "led to confusion or misplaced confidence on the part of petitioners" and that this "confusion or misplaced confidence" justified a "waiver" of the regulation for the petitioners covered by the order. (*Id.* ¶ 26). The FCC expressly held its "waivers" would apply only in cases "where the fax sender had obtained the prior express invitation or permission of the recipient to receive the fax advertisement" (*id.* ¶ 29), and warned the order should not "be construed in any way to confirm or deny whether these petitioners, in fact, had the prior express permission of the recipients to be sent the faxes at issue in the private rights of action" (*id.* ¶ 31).

On August 28, 2015, the Consumer and Governmental Affairs Bureau of the FCC ("Bureau") granted A-S a retroactive waiver of 47 C.F.R. § 64.1200(a)(4)(iv). *In re Rules &*

8

*Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket Nos. 02-278, 05-338, 2015 WL 5120879, at *6 (CGAB Aug. 28, 2015) ("August 28, 2015 Bureau Order"). Defendants have asserted the affirmative defenses of "existing business relationship" and "prior express invitation or permission." EBR and consent. (Ans. to First Am. Compl., Doc. 42, Page ID 294-95. These defenses cannot stave off class certification.

First, the lack of compliant opt-out notice on the Fax (it has no opt-out) precludes the defenses of EBR and prior express permission as a matter of law. *Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 683 (7th Cir. 2013). Second, the retroactive waiver from the FCC's Consumer & Governmental Affairs Bureau is limited to FCC enforcement actions, and not this private right of action in an Article III Court. *See Physicians Healthsource, Inc. v. Stryker Sales Corp.*, 65 F. Supp. 3d 482, 498 (W.D. Mich. 2014) (it "would be a fundamental violation of the separation of powers for the administrative agency to 'waive' retroactively the statutory or rule requirements for a particular party in a case or controversy presently proceeding in an Article III court").[3] Third, "express permission" cannot be transferred or purchased, yet that is the basis of A-S's "express permission" defense. *Stryker*, 65 F. Supp.3d at 497 (rejecting argument that defendant could rely on permission purportedly given to third party from whom it obtained list of fax numbers). Fourth, all of these issues can be decided on a class-wide basis. *See Physicians Healthsource, Inc. v. Doctor Diabetic Supply, LLC*, 2014 WL 7366255, at *5 (S.D. Fla. Dec. 24, 2014) (issue of whether retroactive waiver applies is class-wide issue).

---

[3] The Act creates no role for the FCC in private litigation. As the Seventh Circuit held in *Turza*, 728 F.3d at 688, the reason the TCPA "authorizes private litigation" is so that "recipients [of faxes] need not depend on the FCC." As with any statutory private right of action, it is "the Judiciary, not any executive agency," that "determines 'the scope'—*including the available remedies*—'of judicial power vested by' statutes establishing private rights of action." *City of Arlington v. FCC*, --- U.S. ---, 133 S. Ct. 1863, 1871 n.3 (2013); *see also Nat. Res. Def. Council v. EPA*, 749 F.3d 1055, 1062 (D.C. Cir. 2014) (holding EPA lacked authority to create affirmative defense to its own regulations in statutory private right of action under *City of Arlington*).

**Argument**

I.   **Standards for class certification in a TCPA fax case.**

A party seeking to certify a class action must demonstrate that Rule 23(a)'s four prerequisites are satisfied: (1) that the proposed class is so numerous that joinder of all members is impracticable; (2) that there are questions of law or fact common to the class; (3) that the claims of the representative party are typical of the claims of the class; and (4) that the representative party will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a); *Chicago Teachers Union, Local 1 v. Board of Educ.*, 797 F.3d 426, 433 (7th Cir. 2015).

In addition to satisfying the requirements of Rule 23(a), the plaintiff must satisfy one of the subsections of Rule 23(b). Fed. R. Civ. P. 23(b); *Bell v. PNC Bank, Nat'l Assoc.*, 800 F.3d 360, 373 (7th Cir. 2015). Here, Plaintiff seeks certification under Rule 23(b)(3), which requires a finding that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *Id*.

As discussed below, the Rule 23(a) requirements—numerosity, commonality, typicality, and adequacy—are easily met. The Rule 23(b)(3) requirements of "predominance" and "superiority" are also satisfied. The common legal issues (such as whether the Fax is "advertisement" under the TCPA and whether Defendants are senders of the Fax) "predominate," and there will be no class-member-specific issues for the Court to decide. A class action is clearly "superior" because it would make no economic sense to bring an individual lawsuit for $500 to $1,500 in statutory damages. In addition, the proposed class is ascertainable.

II.  **The class definition is "ascertainable."**

In *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 659 (7th Cir. 2015), the Seventh Circuit clarified the law regarding class "ascertainability," holding it is "focused on the adequacy of the

10

class definition itself" and is limited to whether the class is "defined clearly and based on objective criteria." The Seventh Circuit held ascertainability does *not* concern whether "it would be difficult to identify particular members of the class" and refused to require a "reliable and administratively feasible way to identify all who fall within the class definition." *Id.* (rejecting *Carrera v. Bayer Corp.*, 727 F.3d 300 (3d Cir. 2013)). The Seventh Circuit held "[n]othing in Rule 23 mentions or implies this heightened requirement" and "existing requirements already address the balance of interests that Rule 23 is designed to protect." *Id.* at 658.

In this case, PHI seeks to certify a class of persons successfully sent the Fax. This definition "identifies a particular group of individuals," who were "harmed in a particular way" during "a specific period." *Id.* The class definition is therefore "ascertainable" under *Mullins*.

### III. The Rule 23(a) elements are satisfied.

#### A. Numerosity.

The numerosity requirement of Rule 23(a)(1) is satisfied where the class is so numerous that joinder of all members "impracticable," and "a class of forty is generally sufficient." *McCabe v. Crawford & Co.*, 210 F.R.D. 631, 643 (N.D. Ill. 2002). Here, Defendants sent fax advertisements to thousands of fax numbers. Numerosity is satisfied.

#### B. Commonality.

Rule 23(a)(2) commonality requires "questions of law or fact common to the class." The claims must depend on a common contention that is capable of class-wide resolution. *Bell*, 800 F.3d at 374; *Chicago Teachers Union*, 797 F.3d at 434. In this context, "class-wide resolution means that determining the truth or falsity of the common contention will resolve an issue that is central to the validity of each claim." *Id*.

This case arises out of a common nucleus of fact because Defendants sent the same Fax to all class members. There are four common legal issues to be determined on a class-wide basis:

11

(1) whether the Fax is an "advertisement" as defined by 47 U.S.C. § 227(a)(5) and 47 C.F.R. § 64.1200(f)(1); (2) whether each Defendant is a "sender" of the Fax, as defined by 47 C.F.R. § 64.1200(f)(10); (3) whether Defendants "willfully or knowingly" violated the TCPA or the regulations "prescribed under" it, allowing the Court to increase statutory damages from the automatic $500 per violation to $1,500 per violation; and (4) whether the Bureau's retroactive waiver bars PHI's (and the Class's) TCPA claim.

The Court need not, and should not, decide these questions now. It need only determine whether the "*answers*" to these questions are "apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). These questions can be answered class-wide, and doing so will resolve the entire case, which is why "[c]lass certification is normal" in TCPA fax cases. *Turza*, 728 F.3d at 683.

### C. Typicality.

Rule 23(a)(3) requires the plaintiff's claims be "typical of the claims or defenses of the class." There must be "enough congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group." *Stampley v. Altom Transp., Inc.*, 2015 WL 5675095, at *5 (N.D. Ill. Sept. 24, 2015) (citing *Spano v. Boeing Co.*, 633 F.3d 574 (7th Cir. 2011)). Here, PHI is a member of the class and its claim is typical of the other members. Defendants acted consistently toward the entire class, and all claims, including PHI's, are based on the same legal theory, *i.e.*, transmission of faxes in violation of the TCPA. Typicality is satisfied.

### D. Adequacy of representation.

Rule 23(a)(4) requires that the class representative "fairly and adequately protect the interests of the class." Adequacy concerns the adequacy of the proposed class representative and

adequacy of the plaintiff's counsel. *Stampley*, 2015 WL 5675095, at *5 (quoting *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993)). "Adequacy" is met when the representative's interests are not antagonistic to or in conflict with those of the class. *Uhl v. Thoroughbred Tech. & Telecom.*, 309 F.3d 978, 985 (7th Cir. 2002). "The burden of showing interest is relatively modest." *Redmon v. Uncle Julio's of Illinois, Inc.*, 2008 WL 656075 at *4 (N.D. Ill. Mar. 7, 2008). The Seventh Circuit "has made clear that the bar for a named plaintiff's adequacy is not set high." *Stampley*, 2015 WL 5675095, at *5 (citing *Phillips v. Asset Acceptance*, LLC, 736 F.3d 1076, 1080 (7th Cir. 2013)).

PHI received the Fax on February 18, 2010, on its fax machine at the fax number it has maintained since 1999. (Ruch Decl., ¶ 4). PHI understands its obligations and the nature of the claims in this case; it seeks to certify a class of all persons who were sent the Fax, in violation of the TCPA. (*Id*. at ¶ 7). PHI is willing to do whatever is necessary to protect the interests of the absent class members. (*Id*. at ¶ 8). PHI is unaware of any conflicts of interest with any absent class members. (*Id*. at ¶ 9).

PHI's counsel are qualified to act as class counsel. (*See* Ex. 10, A+W Firm Resume). PHI's counsel has been appointed lead or co-lead counsel in many contested class actions, including many TCPA cases, and has recovered substantial monies for class members. Anderson + Wanca have been litigating TCPA claims since 2003, and have prosecuted dozens of such cases to successful resolution, including many class-wide settlements.[4] Anderson + Wanca will

---

[4] *See, e.g.*, *CE Design Ltd. v. Cy's Crabhouse N., Inc.*, 259 F.R.D. 135, 142 (N.D. Ill. 2009) (finding "plaintiff's counsel's experience in TCPA class action demonstrates that counsel is adequate"); *G.M. Sign, Inc. v. Finish Thompson, Inc.*, 2009 WL 2581324, *6 (N.D. Ill. Aug. 20, 2009); *Targin*, 679 F. Supp. 2d at 894; *Hinman*, 545 F. Supp. 2d at 804; *Holtzman v. Turza*, No. 08 C 2014, 2009 WL 3334909 (N.D. Ill. Oct. 14, 2009); *G.M. Sign, Inc. v. Group C Commc'ns., Inc.*, 2010 WL 744262 (N.D. Ill. Feb. 25, 2010); *Physicians Healthsource, Inc. v. Doctor Diabetic Supply, LLC*, 2014 WL 7366255, at *6 (S.D. Fla. Dec. 24, 2014) ("Anderson & Wanca is one of very few firms that specialize in TCPA class actions and so is knowledgeable of the applicable law and experienced in litigating TCPA classes.").

continue to commit adequate resources, both staffing and monetary, to ensure the Class is well represented.

## IV. The Rule 23(b)(3) requirements are satisfied.

PHI seeks certification under Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." As argued below, both requirements are satisfied.

### A. Common questions predominate.

"Predominance" requires that "common questions represent a significant aspect of a case and can be resolved for all members of a class in a single adjudication." *Stampley*, 2015 WL 5675095, at *6. Common questions "predominate" where "a common nucleus of operative fact and issues underlie the claims brought by the proposed class." *Id*. In this case, the four main questions are (1) whether the Fax is an "advertisements," (2) whether each Defendant is a "sender," (3) whether PHI's and the Class's claim is barred by the Bureau's retroactive waiver, and (4) the appropriate remedies, including whether statutory damages should be trebled and the scope of injunctive relief. The answers to these questions will not vary among class members, and predominance is met.

### B. Class certification is superior to the alternative.

The factors in determining superiority include (1) class members' interests in pursuing individual actions, (2) any existing individual litigation, (3) judicial efficiency, and (4) the "likely difficulties in managing a class action." Rule 23(b)(3)(A)–(D). Here, class members have little economic incentive to sue individually, there are no existing individual lawsuits, and judicial efficiency is best served by adjudicating all claims in one proceeding.

14

The fourth factor, "manageability," requires the court to consider "the likely difficulties in managing a class action," balanced against the "countervailing interests" in deciding whether a class action is superior. *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 658 (7th Cir. 2015). Manageability is almost never a bar to class certification, since "a class action has to be unwieldy indeed before it can be pronounced an inferior alternative—no matter how massive the fraud or other wrongdoing that will go unpunished if class treatment is denied—to no litigation at all." *Id.* (quoting *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 760 (7th Cir. 2014)).

Here, PHI has submitted the Zetafax transmission logs, identifying the fax numbers to which the Fax was sent and the targets of the Fax. This information is sufficient for sending "the best notice practicable" under the circumstances and for processing claims in the event of a class-wide recovery. The case is clearly manageable.

## CONCLUSION

For the foregoing reasons, PHI asks the Court to certify the class, appoint PHI as class representative, and appoint PHI's counsel as class counsel.

             Respectfully submitted,

             PHYSICIANS HEALTHSOURCE, INC.,
             individually and as the representative of a class of
             similarly-situated persons

      By: /s/ Ryan M. Kelly
         One of Plaintiff's Attorneys

Brian J. Wanca
Ryan M. Kelly
ANDERSON + WANCA
3701 Algonquin Road, Suite 500
Rolling Meadows, IL 60008
Telephone: 847/368-1500

**CERTIFICATE OF SERVICE**

      I hereby certify that on February 29, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

                                                                s/Ryan M. Kelly
                                                                 Ryan M. Kelly