UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PHYSICIANS HEALTHSOURCE, INC., an Ohio corporation, individually and as the representative of a class of similarly-situated persons,<br><br>       Plaintiff,<br><br>v.<br><br>A-S MEDICATION SOLUTIONS LLC, JAMES BARTA, WALTER HOFF AND JOHN DOES 1-10,<br><br>       Defendants. | Case No. 12-cv-5105<br><br>Hon. Joan B. Gottschall |

**PLAINTIFF'S REPLY MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

  Plaintiff, Physicians Healthsource, Inc. ("Plaintiff" or "PHI"), submits this Reply Memorandum of Law in Support of its Motion for Class Certification.

**Introduction**

  Defendants' Memorandum in Opposition to Plaintiff's Motion for Class Certification (Doc. 162-1) does not challenge Plaintiff's showing as to Rule 23(a) requirements of numerosity, commonality, typicality, and the adequacy of both the class representative and class counsel. Instead, Defendants claim the Rule 23(b)(3) requirements of predominance and superiority have not been met. First, Defendants argue there are individual issues as to whether each putative class member provided statutory "prior express invitation or permission" to be sent the single fax advertisement at issue in this case (the "Fax"). Defendants admit that <u>they</u> did not obtain prior express permission from any putative class member to send the Fax. Instead, Defendants claim A-S is a "mere continuation" of non-party Allscripts, and any permission obtained by Allscripts from its customers to send fax advertisements was somehow transferred to A-S upon its purchase of

1

Allscripts' medical dispensing business on March 2, 2009. This argument fails factually and as a matter of law, *see infra*, and even if it was colorable, would be decided on a class-wide basis, and thus does not create individualized permission issues.

Second, Defendants argue the retroactive waiver obtained from the Consumer & Governmental Affairs Bureau of the Federal Communications Commission operates to excuse Defendants of their violation of the TCPA and its implementing regulations. This argument also fails as a matter of law. As argued in Plaintiff's Opening Brief, the retroactive waiver does not apply in this private right of action in this Article III Court. (Doc. 147-1, Page ID 1035-37). Moreover, as with Defendants' "permission" argument, the "waiver" question applies equally to all putative class members and can thus be decided on a class-wide basis.

<u>Argument</u>

I. **Defendants' attempt to rely on "permission" to send fax advertisements purportedly obtained by non-party Allscripts fails as a matter of law.**

It is undisputed that Defendants, the "senders" of the Fax, failed to take any steps to obtain prior express permission from any putative class members before transmitting the Fax. As noted in our Opening Brief, A-S acquired Plaintiff's fax number (and all fax numbers to which the Fax was transmitted) by logging into Allscripts' Salesforce database, taking the Allscripts' fax numbers, and then sending the Fax to those fax numbers from A-S. (Doc. 147-1, Page ID 1033). Walter Hoff, CEO for A-S, testified that A-S <u>never</u> contacted the target list generated from the Salesforce data base because "we didn't need to" in that A-S was a "mere continuation" of Allscripts, and Allscripts "had policies to obtain consent." (*Id*. at Page ID 1034). Defendants then argue the "consent" purportedly obtained by Allscripts may be "broad enough" to apply to faxes sent by A-S marketing the same types of products and services previously offered by Allscripts. (Defs.' Br. at 3, 24). Building on this faulty predicate, Defendants claim that "[b]ecause consent

2

cannot be resolved through common or class-wide proof, Plaintiff cannot satisfy the class certification prerequisite that common questions of fact and law predominate over individual ones." (Defs.' Br. at 4). In particular, Defendants argue a determination will need to be made as to (1) the facts and circumstances surrounding consent, (2) the intent of each putative class member when providing consent, (3) the context in which each putative class member provided consent, and (4) the putative class members' understanding of A-S's purchase of the Allscripts' medication dispensing business. (Defs.' Br. at 22). Defendants' argument fails.

First, and not surprisingly, Defendants do not cite a single junk-fax case wherein prior express permission to send a fax advertisement was transferred or assigned from one entity to another. The FCC regulations governing fax advertisements are exacting – the <u>sender</u>[1] must obtain <u>prior</u> express permission to send a fax advertisement from the <u>recipient</u>. In *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991; Junk Fax Prevention Act of 2005*, 21 FCC Rcd. 3787, 3811-12, ¶¶ 45, 46 (May 3, 2006) ("2006 Order") (emphasis added), the FCC stated:

> In the absence of an EBR, the <u>sender must obtain the prior express invitation or permission from the consumer before sending the facsimile advertisement</u>. . . Whether given orally or in writing, <u>prior express invitation or permission must be express</u>, must be given prior to the sending of any facsimile advertisements, and must include the facsimile number to which such advertisement may be sent . . .
>
> We are concerned that permission not provided in writing may result in some senders erroneously claiming they had the recipient's permission to send facsimile advertisements. Commenters that discussed this issue agree that a sender should have the obligation to demonstrate that it complied with the rules, including that it had the recipient's prior express invitation or permission. Senders who chose to obtain permission orally are expected to take reasonable steps to ensure that such permission can be verified. In the event a complaint is filed, the burden of proof

---

[1] The regulations define "sender" as "the person or entity on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement." 47 C.F.R. § 64.1200(f)(10).

3

>rests on the sender to demonstrate that permission was given. We strongly suggests that senders take steps to promptly document that they received such permission.

Here, as Mr. Hoff admits, Defendants did not make any attempt to obtain prior express permission from the target list before sending the Fax. (Doc. 147-1, at Page ID 1034). That undisputed fact disposes as a matter of law of any claimed permission by Defendants. As the 2006 Order makes clear, it is the obligation of the sender, *i.e.*, Defendants, to obtain prior express permission from the consumer (the putative class members), and they have unequivocally admitted they did not do so. At best, Defendants are merely claiming "implied" permission to send fax advertisements derived from Allscripts' purported permission. *See Physicians Healthsource, Inc. v. Stryker Sales Corp.*, 65 F. Supp. 3d 482, 484 (W.D. Mich. 2014) (holding permission was at best "indirect," not *express*, where physician gave fax number to AMA, which then licensed database to third parties). Moreover, this is a class-wide issue that applies in the same fashion to the entire class – no putative class member was treated differently – <u>none</u> provided prior express permission to Defendants to send the Fax. Accordingly, the issue of permission does not require individual analysis and thus cannot defeat class certification; either prior express permission can be transferred, or it cannot.

Second, the FCC regulations make clear in the context of an "established business relationship" (EBR)—a lower standard than "prior express invitation or permission"—that an EBR cannot be transferred between "affiliates." The 2006 Order provides that the "EBR exemption applies only to the business or residential subscriber has had a "voluntary two-way communication," and that it "would not extend to affiliates of that entity, including a fax broadcaster which is retained to send facsimile ads on behalf of that entity." 2006 Order at 3798-99, ¶ 20. The FCC reasoned that "to permit companies to transfer EBRs to affiliates would place an enormous burden on consumers to prevent unwanted faxes from companies with which they

have no direct business relationship." *Id*. If an EBR cannot be transferred to "affiliates," neither can prior express permission. Moreover, as argued above, the regulatory requirement of the sender obtaining prior express permission from the recipient forecloses the derivative use of permission advocated by Defendants.

Cognizant of their "prior express permission" predicament, namely, they don't have any, Defendants cite to an FCC decision in a TCPA case involving voice telephone calls and a series of district court decisions in TCPA "call cases" and argue that the scope of the consumer's "consent" depends on its context and the purpose for which it was given. This argument fails.

Initially, it must be noted that the TCPA does not recognize "consent" to facsimile transmissions. Although the TCPA provisions governing voice telephone calls allow a defense of "prior express consent,"[2] the fax-advertising laws recognize only EBR and "prior express invitation or permission." 47 C.F.R. § 64.1200(a)(4). As the FCC explained as amicus in *Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S.*, 781 F.3d 1245, 1255 (11th Cir. 2015), and as the Eleventh Circuit accepted, "[s]eparate subsections of the statute address voice telephone calls and facsimile advertisements" and "FCC rules implementing those provisions treat voice calls and faxes differently." (*See Palm Beach Golf Center-Boca, Inc. v. Sarris*, FCC Letter Brief, 2014 WL 3962595, at *2 (11th Cir. July 17, 2014) (attached as Exhibit 12)).

Defendants' citation to the FCC's order in *In re Groupme, Inc./skype Commc'ns S.A.R.I. Petition for Declaratory Ruling Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991* ("*Groupme*"), 29 FCC Rcd. 3442, 3446 (2014), for the proposition that "consent to be called at a number in conjunction with a transaction extends to a wide range of calls 'regarding'

---

[2] 47 U.S.C. § 227(b)(1)(A) (prohibiting telephone calls "using any automatic telephone dialing system or an artificial or prerecorded voice" without the called party's "prior express consent").

that transaction, even in at least some cases where the calls were made by a third party," only serves to underscore the futility of their attempt to apply call cases to the instant case. (Defs.' Br. at 4). Groupme, a text messaging service, requires a user who wishes to create a group to represent that each individual added to the group has consented to be added and to receive text messages. *Id*. at 3443. Once registered, the group creator provides Groupme with the wireless telephone numbers of the group members. *Id*. Groupme then sends text messages regarding use of the service. *Id*. Groupme asked the FCC to clarify that "in the case of <u>non-telemarketing or informational text messages</u> prior express consent should be allowed via an intermediary because requiring a specific type of express consent in unnecessarily burdensome for purely informational calls and texts, which is inconsistent with the TCPA's goals." *Id*. at 3443-44 (emphasis added).

The FCC agreed, stating "text-based social networks may send administrative texts confirming consumers' interest in joining such groups without violating the TCPA because, when consumers give express consent to participate in the group, they are the types of expected and desired communications TCPA was not designed to prohibit, even when the consent is conveyed to the text-based social network by an intermediary." *Id*. at 3442. The FCC further "clarified" that "where the consumer has agreed to participate in a Groupme group, agreed to receive associated calls and texts, and provided his or her wireless telephone number to the group organizer for that purpose, the TCPA's prior express consent requirement is satisfied with respect to both Groupme and the group members regarding that particular group, but only that particular group." *Id*. at 3446. Finally, the FCC stated that, although the intermediary may convey consent that has been provided by the consumer, the intermediary "cannot provide consent on behalf of the consumer." *Id*. at 3447.

Thus, by its own terms, *Groupm*e applies to "calls," not fax advertisements. Moreover, *Groupme* did not involve advertisements but instead concerned "administrative texts." It is unclear

6

whether Defendants consider Allscripts an "intermediary," although it clearly is not. What is clear however, is that even in the inapplicable area of TCPA call cases, Allscripts could not provide "prior express consent" on behalf of the putative class *for A-S* to call them on the telephone, let alone provide "prior express invitation or permission" for A-S to send fax advertisements. The intermediary providing "consent" in call cases is the antithesis of the "sender" being required to obtain prior express permission from the recipient to send fax advertisements.

Defendants' reliance *Kolinek v. Walgreen's Co.*, 2014 WL 3056813, at *4 (N.D. Ill. July 7, 2004), meets a similar fate. In *Kolinek*, the plaintiff alleged he gave Walgreens his cellular phone number in response to a request from a pharmacist who said it was needed for potential identity verification purposes. *Id*. at *4. The court held that this did not amount to consent to automated calls reminding him to fill his prescription -- "the FCC made it clear [in its *GroupMe* ruling] that turning over one's wireless number for the purpose of joining one particular private messaging group did not amount to consent for communications relating to something other than that particular group." *Id*. at *3-*4. Further, the court held that "to the extent the FCC's orders establish a rule, it is that the scope of a consumer's consent depends on its context and the purpose for which it is given. Consent for one purpose does not equate to consent for all purposes." *Id*. at *4.

Here, in this junk fax case, it is not a question of the "context" of the consumer's "consent"; rather, the "sender" Defendants have either obtained prior express permission from the putative class members to send the Fax advertisement, or they have not. This question has already been answered – they have not. Defendants' claim that class members "who consented to receive fax advertisements regarding products and services offered by Allscripts MSG may have intended or expected that the consent they provided would include faxes sent by the business successor of MSG," *see* Defs.' Br. at 21, is a far cry from the requisite prior express permission. Indeed, the

7

text of Defendants' brief further underscores the inapplicability of the call cases upon which they rely. Defendants quote from *Olney v. Job.com, Inc*., 2014 WL 1747674, at *6 (E.D. Cal. May 1, 2014) ("an individual may indirectly provide a third-party with express consent to be called under the TCPA"), and from *Baird v. Sabre, Inc*., 995 F. Supp.2d 1100, 1107 (N.D. Ill. 2014), *aff'd*, No. 14-55293, 2016 WL 424778 (9th Cir. Feb. 3, 2016) (plaintiff who voluntarily provided cell phone number to airline "consented to be contacted on her cellphone about flight-related matters," and text message sent by airline's third-party vendor offering to provide flight information "fell within the scope of her prior express consent.") (Defs.' Br. at 3, 4). These cases are inapplicable to the issue of whether Defendants obtained prior express permission to send the putative class a fax advertisement. There is simply no evidence in the instant case (nor could there be based on the regulations) that Allscripts had the authority to provide prior express permission on behalf of its customers to Defendants so that Defendants could then send the Fax to Plaintiff and the putative class – "the intermediary cannot provide consent on behalf of the consumer." *Groupme*, 29 F.C.C Rcd. at 3447.[3]

In sum, Defendants' contention that prior express permission cannot be resolved through common or class-wide proof is simply wrong. (Defs.' Br. at 4). All of the prior express permission erroneously claimed by Defendants is from a single source, Allscripts. Either Defendants can acquire Allscripts' purported prior express permission to send fax advertisements to a list of

---

[3] Even in call cases, "express consent" cannot be transferred. In *Satterfield v. Simon & Schuster*, 569 F.3d 946, 955 (9th Cir. 2009), the plaintiff consented to receiving promotional materials from a company (Nextones) and its affiliates and brands. The plaintiff's cellphone number was subsequently obtained by an unaffiliated entity, Simon & Schuster, which sent a promotional text message about a book having no relation to Nextones. *Id*. at 949. The Ninth Circuit held that the plaintiff's "consent to receive promotional material by Nextones and its affiliates and brands cannot be read as consenting to the receipt of Simon & Schuster's promotional material." *Id.*

customers taken from Allscripts Salesforce database, or they cannot. Prior express permission can either be transferred or assigned, or it cannot. While Plaintiff submits the answers to these question is a resounding no, the fact of the matter is that these questions may be decided by the Court as to the entire putative class. Thus, there is no need for individual inquiries.

Other arguments advanced by Defendants are addressed in *seriatim*. First, Defendants claim that undisputed evidence "confirms that Allscripts obtained consent prior to sending faxes promoting Allscripts' goods and services." (Defs.' Br. at 20). While Plaintiff disagrees with this assertion, whether <u>Allscripts</u> had prior express permission to send fax advertisements to the fax numbers on the Salesforce database is irrelevant to whether Defendants had such permission.

Second, Defendants' constant refrain that A-S is the "mere continuation" of Allscripts' MSG business is starkly at odds with the testimony elicited from Allscripts' Rule 30(b)(6) witness, Brian Moffett, who testified that Allscripts (i) had no knowledge that A-S was faxing, (ii) never called any companies to seek permission for A-S to send fax advertisements, (iii) did not obtain fax numbers on behalf of A-S in order for A-S to send fax advertisements, and (iv) had "no idea" as to what A-S did regarding the February 2010 faxes because "[i]t's a different company. I would have no idea what A-S did." (*Id*., Page ID 1057-59, at 24-26, 30-31). Moffett testified that Allscripts "never gave them [A-S] our fax numbers," that Allscripts did not provide customer data to A-S following the Allscripts' divesting of the MSG, and that the fax numbers that were used to send the faxes in February 2010 did not come from Allscripts – "they [A-S] had two log-in accounts to our Salesforce data base that we know of. The only – the only possible theory here is that they took it." (*Id*., Page ID 1058-59, at 29, 31). Allscripts subsequently cut off A-S's access to the Salesforce data base. (*Id.*, Page ID 1059, at 32). Moffett testified that A-S took the information from the Salesforce database [that contained all of the fax numbers to which the Fax

was transmitted by A-S] "without the authorization of Allscripts," and that "we have no records to show we ever gave them the data, so we have no idea how they got it." (*Id*., Page ID 1060, at 33).[4]

Under these circumstances, Defendants' claim that Allscripts transferred its claimed prior express permission to send fax advertisements to the fax numbers on the Salesforce database taken from Allscripts, and its claim to be a "mere continuation" of Allscripts, is unsupportable.

Third, A-S's purported practice of sending fax advertisements only to its customers is irrelevant to the instant case as it is undisputed that Defendants used the Allscripts Salesforce data base to obtain the targets of its fax advertising and that it did not attempt to obtain prior express permission from a single person or entity on that list. (Defs.' Br. at 12).

Fourth, Defendants' claim that Plaintiff provided prior express permission to Allscripts to send "information" via fax is irrelevant because permission to send "information" is not permission to send fax advertisements, and because Defendants obtained Plaintiff's fax number from the Allscripts Salesforce data base. Moreover, Magistrate Judge Cole rejected the very evidence relied upon by Defendants to support this claim in *Physicians Healthsource, Inc. v. Allscripts Health Sols., Inc.*, 2015 WL 6318272, at *5 (N.D. Ill. Oct. 21, 2015).

Fifth, while Defendants assert it is undisputed that Allscripts had prior express permission to send fax advertisements, the fact of the matter is that Allscripts has been sued on two separate occasions for violating the TCPA by sending unsolicited fax advertisements. The first case,

---

[4] Moffett also testified that Allscripts gave A-S a log-in ID and passwords because Glen Tullman of Allscripts wanted to see the MSG business sold to A-S "prosper" after it was sold, so "I think he was trying to help them out to give them some leads, you know, for them to be able to go into our database, find out some of our customers at ePrescribe, et cetera, and help them, you know, succeed. (Moffett Dep., 147-4, Page ID 1060, at 34-35). However, A-S has not identified any purported "authorization" from Allscripts to use Allscripts' claimed "prior express permission" to send fax advertisements to the customers listed in the Salesforce database. Moreover, as argued herein, such "authorization" is not Allscripts' to give – prior express permission must be obtained by the sender from the recipient.

*Geismann v. Allscripts Healthcare Solutions, Inc.*, No. 09-cv-5114 (N.D. Ill.), was eventually settled. A class settlement was approved February 2, 2012. (*See* Doc. 164-7, *Geismann* Final Approval Order). The settlement was strictly limited to faxes sent "between February 11, 2008 and April 26, 2008" because that was the only time period for which defendants in *Geismann* had produced evidence of their faxing activity. (*Id.* ¶ 5(a)). After final approval in *Geismann*, Plaintiff's counsel discovered Allscripts Defendants had sent at least 36 fax advertisements to Plaintiff, from July 9, 2008, to December 5, 2011, which were not produced during the *Geismann* litigation. (Doc. 1, ¶ 11). This lead to the second suit against Allscripts, which is currently pending before Magistrate Judge Cole, cited above.

      Sixth, Defendants impermissibly rely on undisclosed witnesses. In their response, Defendants submitted declarations obtained from 5 putative class members -- Lindsey Williams, Doc. 162-1, Page ID 1863, Jeannine Oliver, *id.* at Page ID 1866, Victoria Smith, *id.* at Page ID 2415, Cathy Bolt Jones, *id.* at Page ID 2419, and Debra Lucas, *id.* at Page ID 2422. (Defs.' Br. at 14-16). These declarants discuss their "consent" to receive Allscripts' "product information," and that they considered A-S a "mere continuation" of Allscripts. (*Id.*) These declarants admittedly did not provide prior express permission to Defendants to send them the Fax advertisement at issue. Moreover, these witnesses were disclosed for the first time in Defendants' response to Plaintiff's motion for class certification. Discovery in this case was reported completed on December 10, 2015. (Doc. 145). These five declarants were never disclosed. Accordingly, their declarations should be barred pursuant to Fed. R. Civ. P. 26(a)(1), 26(e), and 37(c)(1).

## II.    The effect of A-S's "retroactive waiver" fails as matter of law in this Court and is a class-wide question that should be decided on the merits *after* class certification.

      Defendants claim that the retroactive waiver issued by the FCC's Consumer & Governmental Affairs Bureau on August 28, 2015, *see In re Rules & Regulations Implementing*

11

*the Telephone Consumer Protection Act of 1991*, 30 F.C.C. Rcd. 8598, 8602 (2015) ("Bureau order"), should apply to the Fax at issue in this case. (Defs.' Br. at 25-29). Defendants are incorrect.

Contrary to Defendants' argument, the Court need not decide the effect of the "waiver" now. As the district court held in *Physicians Healthsource, Inc. v. Doctor Diabetic Supply, LLC*, 2014 WL 7366255, at *5 (S.D. Fla. Dec. 24, 2014), at the class-certification stage, an administrative waiver like A-S's merely "create[s] another class-wide question: whether the FCC can grant a retroactive waiver that would apply in civil litigation between private parties." That question is a sub-issue under the main common question of whether Defendants' failure to use compliant opt-out notice precludes it from asserting "prior express invitation or permission." That question should be decided *after* class certification. If the answer requires a reexamination of class certification, Rule 23(c)(1)(C) expressly authorizes a district court to "alter or amend" an order granting or denying class certification at any time prior to final judgment.

If the Court decides the effect of A-S's administrative "waiver" at this stage, it should hold it cannot have the effect of precluding this Court from finding a violation of 47 C.F.R. § 64.1200(a)(4)(iv). The "waiver" was issued by the FCC's Consumer & Governmental Affairs Bureau on August 28, 2015, pursuant to an order issued October 30, 2014 by the full FCC—meaning the five Commissioners appointed by the president—which granted waivers to two dozen petitioners and invited "similarly situated" persons to seek identical waivers. The October 30, 2014 Order is currently on appeal to the D.C. Circuit. Undersigned counsel represent several parties in that proceeding, who appealed on the basis that the October 30, 2014 Order appears to have been intended to immunize particular parties from liability in ongoing private litigation, which would be a violation of the separation of powers. (*See* Pet'rs Joint Opening Br. at 12–15, attached as Exhibit 13).

12

In its response brief, the FCC argued that the Commission merely "assumed" that the "result" of the waivers would be that "those lawsuits [against the petitioners] presumably could not lead to damages." (Final Brief for Respondents FCC & USA at 38, attached as Exhibit 14). The FCC argued the Commission "reasonably assumed" that would be the result, but it did not actually decide what effect the waivers would have in Article III courts. (*Id.*) Thus, this Court should decide the effect of the Bureau waiver de novo, according no deference to the FCC's "assumption." For the reasons below, A-S's waiver has no effect in this private cause of action.

The Supreme Court has held that the TCPA, 47 U.S.C. § 227(b)(3), vests district courts with subject-matter jurisdiction to find a "violation" of the Act or the "regulations prescribed under" the Act. *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 752 (2012). The "regulations prescribed under" the TCPA require compliant opt-out notice to assert EBR or "prior express invitation or permission." 47 C.F.R. § 64.1200(a)(4)(ii) & (iv). An administrative "waiver" does not change that.

In *Physicians Healthsource, Inc. v. Stryker Sales Corp.*, 65 F. Supp. 3d 482, 498 (W.D. Mich. 2015), the district court addressed the effect of an identical waiver at summary judgment, after certifying the class, and held the effect is limited to FCC enforcement proceedings[5] because "[i]t would be a fundamental violation of the separation of powers for the administrative agency to 'waive' retroactively the statutory or rule requirements for a particular party in a case or controversy presently proceeding in an Article III court." *Id.* The court held nothing in the waiver "invalidates the regulation itself," which "remains in effect just as it was originally promulgated" for finding a violation of the "regulations prescribed under" the TCPA. *Id.*

---

[5] The TCPA may be enforced by private parties, 47 U.S.C. § 227(b)(3), state attorneys general, *id.* § 227(g), and the FCC, *id.* § 503(b).

13

*Stryker* relied on *Turza*, 728 F.3d at 688, where the Seventh Circuit affirmed class certification and summary judgment for an opt-out-notice class and refused to give any effect to a portion of a 2006 FCC ruling stating that faxes containing only "incidental advertising" are not actionable, holding the regulation itself says if a fax contains "any" advertising, then it is an advertisement. The Seventh Circuit held the portion of the 2006 ruling regarding "incidental advertising" was merely "a declaration of the [FCC's] enforcement plans" with no effect in private litigation, given that the TCPA "authorizes private litigation" in the first place so "recipients [of faxes] need not depend on the FCC." *Id.* This Court should apply *Turza*, as *Stryker* did, to hold that the opt-out regulation "remains in effect just as it was originally promulgated," and A-S's waiver is at best a "declaration of the [FCC's] enforcement plans" (i.e., its plans not to bring an enforcement action against A-S). *See also Fauley v. Heska Corp.*, 112 F. Supp. 3d 775 (N.D. Ill. 2015) (Alonso, J.) (holding "it is not clear what impact, if any, a waiver would have on this litigation"). This issue concerns the Court's subject-matter jurisdiction, and it is "the Judiciary, not any executive agency," that determines "the scope" of "'judicial power vested by' statutes establishing private rights of action." *City of Arlington v. FCC*, 133 S. Ct. 1863, 1871 n.3 (2013); *see also Nat. Res. Def. Council v. EPA*, 749 F.3d 1055, 1062 (D.C. Cir. 2014) (holding EPA lacked authority to create affirmative defense to its own regulations for use in private "citizen suits" under *City of Arlington*).

Finally, Defendants rely on *Simon v. Healthways, Inc.*, 2015 WL 10015953 (C.D. Cal. Dec. 17, 2015), and *Bais Yaakov of Spring Valley v. Graduation Source, LLC*, 2016 WL 1271693 (S.D.N.Y. Mar. 29, 2016), for the proposition that the administrative waiver obtained by A-S bars Plaintiff's claim here. First, both cases expressly recognize that in order for the waiver to apply, Defendants must demonstrate prior express permission. *Simon*, 2015 WL 10015953, at *6; *Bais*

*Yaakov*, 2016 WL 1271693, at *4; *see also* 2006 Order, 21 FCC Rcd. at 3812 ¶ 46 ("the burden of proof rests on the sender to demonstrate that permission was given"); *Paldo Sign & Display Co. v. Wagener Equities, Inc.*, 67 F. Supp. 3d 874, 884 (N.D. Ill. 2014) (same). As demonstrate above, Defendants' claimed permission fails as a matter of law.

Second, Plaintiff respectfully submits that these cases were incorrectly decided, also for the reasons cited above, namely, that it is this Court that determines "the scope" of "'judicial power vested by' statutes establishing private rights of action." *City of* Arlington, 133 S. Ct. at 1871 n.3; *Nat. Res. Def. Council*, 749 F.3d at 1062. Contrary to the FCC's claim, cited in both *Simon*, at *7, and *Bais Yaakov*, at *4, it is not (by granting retroactive waivers) "interpreting a statute," it is "assuming" that it has the power to divest this Court of subject matter jurisdiction expressly provided by Congress in creating a private right of action in 47 U.S.C. § 227(b)(3) for violations of "the regulations prescribed under this subsection," which gives the FCC no authority to impair that right. Indeed, the Court in *Bais Yaakov*, at *5, mistakenly concludes that the waiver does not retroactively release Defendants from statutory liability, but only from the regulation the FCC is interpreting. The TCPA statute just quoted expressly provides for statutory liability for violations of the regulations.

In sum, as set forth above, the FCC does not have the authority to excuse Defendants' violation of the TCPA in this Court. Moreover, as there can be no showing of prior express permission, the waiver argument is a non-starter.

## **CONCLUSION**

Defendants do not dispute that the requirements of Rule 23(a) are satisfied, and its arguments against Rule 23(b)(3) predominance and superiority fail. PHI asks the Court to certify the class, appoint PHI as class representative, and appoint PHI's counsel as class counsel.

                    Respectfully submitted,

                    PHYSICIANS HEALTHSOURCE, INC.,
                    individually and as the representative of a class of
                    similarly-situated persons

By:    s/Ryan M. Kelly
         One of Plaintiff's Attorneys

Brian J. Wanca
Ryan M. Kelly
ANDERSON + WANCA
3701 Algonquin Road, Suite 500
Rolling Meadows, IL 60008
Telephone: 847/368-1500

## CERTIFICATE OF SERVICE

      I hereby certify that on June 3, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

                    s/Ryan M. Kelly
                    Ryan M. Kelly