**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

PHYSICIANS HEALTHSOURCE, INC.,          )
an Ohio corporation, individually and on )
behalf of similarly situated persons,    )
                                          )
                    Plaintiffs,          )
                                          )          Case No. 12-cv-05105
          v.                             )
                                          )          Judge Joan B. Gottschall
A-S MEDICATION SOLUTIONS, LLC,           )
JAMES BARTA, WALTER HOFF and             )
JOHN DOES 1-10,                          )
                                          )
                    Defendants.          )

## MEMORANDUM OPINION & ORDER

Plaintiff Physicians Healthsource, Inc. ("PHI"), for itself and on behalf of the class it

seeks to represent (collectively, "Plaintiffs"), bring this lawsuit against Defendant A-S

Medication Solutions, LLC ("A-S"), James Barta, Walter Hoff, and John Does 1-10

(collectively, "Defendants"), alleging violations of the Telephone Consumer Protection Act of

1991 ("TCPA"), 47 U.S.C. 227 *et. seq.* Specifically, PHI, on behalf of a putative class consisting

of the owners of 11,422 fax numbers, claims that it received an unsolicited fax sent by the

defendants.  PHI's motion for class certification pursuant to Fed. R. Civ. P. 23 is before the

court.  (Pls. Mot. Class Cert., ECF No. 147.)  For the following reasons, the motion for class

certification [147] is granted.

## I.       BACKGROUND

### A.       Allscripts Obtains Fax Numbers from the Class Members

Allscripts, LLC ("Allscripts") is a company that "offer[s] an open, integrated portfolio of

healthcare information technology solutions for hospitals, physician practices, and extended care

1

organizations." [Def. Resp. at 6, ECF No. 171. Allscripts has provided a variety of healthcare-related products and services since its incorporation in 1986. [*Id.*] One such healthcare solution was Allscripts' "pre-packaged medication fulfillment solutions business" ("MSG"). [*Id.*] The MSG provided "both medications and software for dispensing and inventory control." [*Id.*] Since 2006, Allscripts has used a customer relationship management database called Salesforce. [*Id.*] Salesforce maintained Allscripts' customers' contact information. [*Id.*] One of the ways in which Allscripts communicated with its customers and prospective customers was via fax. [*Id.*] Defendants contend that "if Salesforce included a fax number for a particular entity, it was only because that entity voluntarily provided its fax number to Allscripts, along with permission to fax it something." [*Id.* at 7.] This is the basis for Defendants' contention that Allscripts obtained consent from its customers to send them faxes. Allscripts sent information about its various products and services—including the MSG—to its customers and prospective customers via fax. [*Id.*]

Brian Moffett has been an Allscripts employee for 21 years. [Def. Resp. at 8, ECF No. 171.]; [Pls. Class Cert. Memo. at 5, ECF No. 147-1.] He is familiar with Allscripts' business practices and how Allscripts keeps track of information pertaining to its customers and prospective customers in Salesforce. [*Id.*] In his deposition, Moffett testified that Allscripts had a custom and practice of faxing advertisements only with the consent of the recipient. [Def. Resp. at 8, ECF No. 171.] Defendants contend that Allscripts' employees were trained always to ask permission before sending fax advertisements, and that part of asking for permission to send a fax would be to verify the fax number that Allscripts had for that entity in its Salesforce database. [*Id.*]

**B.     A-S purchases Allscripts' MSG**

On March, 2009, A-S and Sav-Rx, LLC ("Sav-Rx") entered into an Asset Purchase Agreement ("APA") with Allscripts.  [Pls. Class Cert. Memo. at 3, ECF No. 147-1.]  A-S purchased Allscripts' MSG, which "include[d] the offering of a formulary of pre-packaged medications and related dispensing software licensed to customers using FirstFill and TouchScript, as currently conducted."  [*Id.*]  A-S purchased "all property and assets primarily used in or primarily held for use in" the MSG, which, among other things, included the following:

> The machinery, equipment, furniture, tools, computer hardware and network infrastructure that are primarily used in or primarily held for use in the [MSG] Business…

> The inventories held for use primarily in the operation and conduct of the [MSG] Business, including raw materials, packaging materials, goods in process, finished goods, labels and supplies…

> The personnel, benefits and payroll records of the Transferred employees…

> [A]ll advertising and promotional materials, manuals and data, sales and purchase correspondence, lists of present and former suppliers, all customer information and data including lists of present and former customers…

> Any and all software, whether in source code, object code or human readable form (including any intellectual property rights related thereto and associated documentation), that is primarily used in or primarily held for use in the [MSG] Business, including FirstFillTM and TouchScriptTM…

> All of the trade names, trademarks, service marks and other marks of [Allscripts] (including brand names, product names, logos, and slogans) and application therefor, other than, for the avoidance of doubt, any of the foregoing using or derived from "Allscripts," that are primarily used in or primarily held for use in the [MSG] Business…

[*Id.* at 9–10.]  A-S also assumed "all liabilities and obligations…primarily relating to or arising out of the [MSG] Business or the Assets . . . ."  [*Id.* at 10.]  A-S had, for a limited period

of time and pursuant to the Marketing Agreement, remote access to Allscripts's Salesforce database, including a login and password. [*Id.* at 5.]

A-S used a software system AlphaServer 4100 ("Alpha") in its internal operations. (Pls. Class Cert. Memo. at 4, ECF No. 147-1.) A-S started using Alpha following the APA. (*Id.*) Alpha maintains business contact information for all A-S customers. (*Id.*)

## C.     The Fax Blast

PHI is a former customer of Allscripts. (Def. Resp. at 13, ECF No. 171.) Allscripts and PHI communicated on multiple occasions, including via fax. (*Id.*) PHI received the fax image (the "Fax") at issue on February 18, 2010 from A-S. [Pls. Class Cert. Memo. at 5, ECF No. 147-1.] Subsequent forensic analysis of A-S's call records showed that A-S conducted a fax blast between February 10 and February 28, 2010. [*Id.* at 6.] This broadcast included 15,669 total fax transmissions to 15,666 unique fax numbers, and 11,422 transmissions were documented by the transmission log as fully received error-free transmissions. [*Id.*]

Defendant Hoff has been the chief executive officer of A-S since March 2009. [*Id.*] Hoff is also one of the owners of A-S; he is in charge of the production facility, purchasing and pricing, client relationships, the A-S sales force, legal, regulatory, and IT departments. [*Id.* at 2–3.] PHI contends that Hoff "approved" sending the Fax. [*Id.* at 5.] Hoff testified that A-S acquired PHI's fax number not from Alpha but from the Allscripts Salesforce database, and that Allscripts provided A-S access to the Salesforce database for "a short time," during which A-S could log in and run reports. [Pls. Class Cert. Memo. at 5, ECF No. 147-1.] A digital forensic analysis also showed that fax numbers from the A-S fax log for the fax blast matched fax numbers and other corresponding data in Allscripts' Salesforce database. [Def. Resp. at 17, ECF No. 171.] The Fax was transmitted to a list of Allscripts' customers and prospective customers

that was generated from Allscripts' Salesforce database rather than A-S's Alpha database. [Def. Resp. at 17, ECF No. 171.]

## D. PHI's Claims

### i. TCPA violation

PHI advances class-action claims based on alleged violations of The Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. 227 *et. seq.* The Federal Communications Commission ("FCC") has authority to prescribe regulations to implement the TCPA. *Id.* at § 227(b)(2); *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012) (the Act directs the FCC to prescribe implementing regulations). TCPA forbids the use of "any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement," unless certain exceptions are met. 47 U.S.C. § 227(b)(1)(C).

PHI claims that Defendants successfully sent 11,422 unsolicited facsimiles advertising the availability and quality of A-S's pharmaceutical products and services. (Pls. Class Cert. Memo. at 2, ECF No. 147-1.) The Fax was sent to Plaintiffs in a fax blast conducted by the Defendants between February 10, 2010, and February 28, 2010, and was received by PHI on February 18, 2010. (*Id.* at 2.) TCPA defines an "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's *prior express invitation or permission*, in writing or otherwise." *Id.* § 227(a)(5) (emphasis added).

### ii. Prior Express Invitation or Permission

Defendants argue that A-S had the recipients' prior express invitation or permission to send the Fax at issue.[1] Defendants have the burden of proving prior express invitation or permission. *See Thrasher–Lyon v. Ill. Farmers Ins. Co.*, 861 F. Supp. 2d 898, 905 (N.D. Ill. 2012). The parties do not dispute that A-S obtained the list of fax numbers from Allscripts' Salesforce database. [*See* Pls. Class Cert. Memo. at 5, ECF No. 147-1.]; [Def. Resp. at 13, ECF No. 171 ("A-S Medication acquired Plaintiff's fax number from Allscripts' Salesforce database of customers.").] Further, there is no dispute that A-S did not obtain prior express permission from any of the class members directly. [Def. Resp. at 7, ECF No. 171. ("Defendants are not arguing that Allscripts specifically obtained express consent for A-S Medication to send fax advertisements after Allscripts divested the MSG.").] Rather, Defendants contend that "[i]f Salesforce included a fax number for a particular entity, it was only because that entity voluntarily provided its fax number to Allscripts, along with permission to fax it something." [Def. Resp. at 7, ECF No. 171.] Accordingly, Defendants argue that the consumers' permission to receive faxes from Allscripts was "broad enough to encompass products and services marketed and sold by Allscripts' MSG" and it "may have been broad enough to encompass subsequent faxes from A-S Medication" because A-S was "a continuation of Allscripts' MSG." [Def. Resp. at 21, ECF No. 171.]; [Def. Surreply at 3, ECF No. 189.]

Put simply, Defendants argue that the alleged permission given to Allscripts to send faxes extended to A-S.

---

[1] Although Defendants frequently talk about "consent," TCPA and the FCC regulations refer to "prior express invitation or permission" in the context of facsimile advertisements. *See* 47 U.S.C. § 227; 47 C.F.R. § 64.1200(a)(4)(iii). Hence the court will use the terminology from the TCPA.

PHI contests Defendants' assertion that Allscripts had prior express permission to send fax advertisements. [Pls. Reply at 10, ECF No. 175.][2]

### iii.    Transfer Between Affiliates

While PHI argues that Allscripts did not receive express permission to send faxes to its customers, PHI also contends that prior express invitation or permission cannot be transferred between two entities. [Pls. Reply at 4, ECF No. 175.] PHI points out that the FCC regulations provide that established business relationships ("EBR") "cannot be transferred between 'affiliates'" in the context of fax advertising. [*Id.* (citing *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991; Junk Fax Prevention Act of 2005*, 21 FCC Rcd. 3787, 3811-12, ¶¶ 45, 46 (May 3, 2006).] PHI argues that since EBR cannot be transferred, prior express invitation or permission also cannot be transferred. [*Id.*]

Defendants, in response, reiterate that A-S is not merely an "affiliate" of Allscripts, but rather a continuation. [Def. Surreply at 3, ECF No. 189.] Defendants also contend that under 47 C.F.R. § 64.1200(f)(5)(ii), EBR may be extended to affiliates if the "subscriber would reasonably expect them to be included given the nature and type of goods or services offered by the affiliate and the identity of the affiliate." [*Id.*]

PHI in turn argues that 47 C.F.R. § 64.1200(f)(5)(ii) cited by Defendants relates to "established business relationship for purposes of telephone solicitations." [Pls. Rejoinder at 4, ECF No. 195.] PHI notes that "mere continuation" is an exception to the rule that a successor

---

[2] The parties spent considerable time discussing the issues pending before Judge Cole in *Physicians Healthsource, Inc. v. Allscripts Healthcare Solutions, Inc., et. al.*, Case No. 12-cv-03233 (N.D. Ill.) ("*Allscripts* case"). In particular, the parties argue concerning the extent to which this court may rely on documents submitted in the *Allscripts* case regarding Allscripts's policy to obtain prior permission from its customers before sending fax advertisements. [*See* Def. Surreply at 4, ECF No. 189.]; [Pls. Rejoinder at 7, ECF No. 195.] It is unnecessary to determine the extent to which this court may rely on those documents because, for the purpose of the current motion to certify the class, it is sufficient that the issue of whether Allscripts had such a policy is a contested issue that can be resolved class-wide.

corporation is not liable for the debts and liabilities of its predecessor in an asset purchase. [*Id.* at 3.] It argues that there is no such exception for prior express permission, and, even if there were an exception, "mere continuation" is applicable only when "there is a continuation of the corporate entity of the seller—not when there is a continuation of the seller's business." [*Id.* (citing *Vernon v. Schuster*, 688 N.E.2d 1172, 1175 (Ill. 1997)).] Hence, PHI argues that since Allscripts and A-S are separate entities, Defendants may not rely on a "continuation" argument.

### iv.     Opt-out Notice Requirement

Finally, PHI contends that Defendants cannot rely on the established business relationship or prior express invitation or permission defenses because, even if prior express consent *was* given and the consent was transferrable, the Fax did not contain an "opt-out" notice. *See Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013) ("Because [the defendant] omitted opt-out notices, it does not matter which recipients consented or had an established business relation"). The FCC has issued regulations requiring specific "opt-out" language on fax advertisements in order to advise recipients of how to stop receiving such faxes. 47 C.F.R. § 64.1200(a)(4)(iii) ("No person may…[u]se a telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine, unless . . . [t]he advertisement contains a notice that informs the recipient of the ability and means to avoid future unsolicited advertisements."); § 64.1200(a)(4)(iv) ("A facsimile advertisement that is sent to a recipient that has provided prior express invitation or permission to the sender must include an opt-out notice that complies with the requirements in paragraph (a)(4)(iii) of this section."). TCPA does not itself contain an "opt-out" requirement. *See* 47 U.S.C. § 227, *et. seq.*

In response, Defendants argue that they still can rely on prior express invitation or permission defense because, even though there was no opt-out language in the Fax, the FCC

granted A-S a retroactive waiver of the opt-out language requirements for all faxes sent with prior express invitation or permission on August 28, 2015. [Def. Resp. at 25–26, ECF No. 171. (citing *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 8598, 8602 (2015) ("Bureau Order") ("we grant waivers to parties similarly-situated to the initial waiver recipients granted relief by the Commission due to uncertainty whether the opt-out notice requirement applies to faxes sent with recipient consent.").] PHI does not challenge the validity of the waiver, but instead argues that the waiver does not apply in private litigation. [Pls. Class Cert. Memo. at 10, ECF No. 147-1.]

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 23 allows class certification when the proposed class satisfies all of the requirements of Rule 23(a) and at least one of the requirements of Rule 23(b). The party seeking class certification must present proof that the requirements of Rule 23 are satisfied. "[T]he party seeking class certification assumes the burden of demonstrating that certification is appropriate." *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993). Plaintiffs bear the burden of showing by a preponderance of the evidence that all of Rule 23's requirements are satisfied. *Comcast Corp. v. Behrend*, 564 U.S. 338, 350 (2011). The requirements of Federal Rule of Civil Procedure 23(a) are as follows: (1) the class is so numerous that joinder of all members is impracticable (numerosity); (2) there are questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and (4) the representative parties will fairly and adequately protect the interests of the class (adequacy). Fed. R. Civ. P. 23(a).

If Plaintiffs meet this initial burden, they must then show that the proposed class satisfies one of the three requirements set forth in Rule 23(b). *See Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006). Because Plaintiffs seek money damages, they must meet the requirements of Rule 23(b)(3). Therefore, Plaintiffs must show that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members (predominance), and that a class action is superior to all other available methods for fair and efficient adjudication of the controversy (superiority)." Fed. R. Civ. P. 23(b)(3); *see also Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 814 n.5 (7th Cir. 2012). In addition to Rule 23 requirements, Plaintiffs must also provide a workable class definition by demonstrating that the members of the class are identifiable. *See Oshana*, 472 F.3d at 513.

The court "must make whatever factual and legal inquiries [are] necessary to ensure that requirements for class certification are satisfied before deciding whether a class should be certified, even if those considerations overlap the merits of the case." *Am. Honda Motor Co. v. Allen*, 600 F.3d 813, 815 (7th Cir. 2010) (citing *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676 (7th Cir. 2001)). Although *Szabo* stands for the proposition that the court is not free to accept all of the complaint's allegations when deciding whether to certify a class, the decision whether to certify a class is not based on a preliminary assessment of the ultimate merits of Plaintiffs' claims. *Rahim v. Sheahan*, 2001 WL 1263493, at *10 (N.D. Ill. Oct. 19, 2001). Rather, the preliminary inquiry is into the merits of those allegations that bear on the suitability of a case for class treatment under Rule 23(a) and (b). *Id.* To base class certification on a prediction of who will win the case would be at odds with *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974). *Id.* In the end, the court has "broad discretion to determine whether

certification of a class-action lawsuit is appropriate." *Ervin v. OS Restaurant Servs., Inc.*, 632

F.3d 971, 976 (7th Cir. 2011).

## III.    ANALYSIS[3]

### A.    Rule 23 Class Certification Requirements[4]

#### i.    Class Definition

PHI seeks to certify the following Class:

> All persons or entities who were successfully sent the Fax providing "A-S Medication Solutions LLC, Quality Service Guaranteed," and "Ask about our new PedigreeRx Solution!," between February 10, 2010, and February 28, 2010.

[Pl. Class Cert. Memo. at 2, Doc. 147-1.]

While Defendants have not contested ascertainability, it is "a threshold issue—if the class

cannot be identified, then courts cannot reliably assess whether an action on behalf of that class

satisfies the express requirements of Rule 23." *N.B. v. Hamos*, 26 F. Supp. 3d 756, 763 (N.D. Ill.

2014). Ascertainability entails two important elements: (1) the class must be defined with

reference to objective criteria; and (2) there must be a reliable and administratively feasibly

mechanism for determining whether putative class members fall within the class definition. *Id.*

A class is not sufficiently definite if it could include a substantial number of people who have no

claim under the theory advanced by the named Plaintiff. *See Oshana v. Coca–Cola Co.*, 472

F.3d 506, 513 (7th Cir. 2006).

Here, PHI's class definition is ascertainable. There are two objective characteristics that

define the class: (1) receiving the Fax providing "A-S Medication Solutions LLC, Quality

---

[3]Defendants argue that certain putative class members lack standing because they have not suffered a concrete injury, relying on *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540 (2016). Defendants' reliance on *Spokeo* is misplaced. Violation of the TCPA is a concrete harm. *Ira Holtzman, C.P.A. v. Turza,* 728 F.3d 682, 684 (7th Cir. 2013).

[4]Defendants do not address the Rule 23(a) requirements in their response to PHI's motion to certify. Rather, Defendants focus their opposition on PHI's alleged failure to satisfy Rule 23(b)'s predominance and superiority requirements.

Service Guaranteed," and "Ask about our new PedigreeRx Solution!," (2) between February 10, 2010, and February 28, 2010.  Additionally, A-S' transmission records appear to show that this broadcast contained records of 15,669 total fax transmissions to 15,666 unique fax numbers, a total of which 11,422 transmissions are documented by the computer software used to broadcast the Fax as fully received error-free transmissions.

Defendants object to the class definition as overbroad because PHI's "class definition does not distinguish between putative class members who consented [to receiving the Fax] and have no viable claim and those who did not consent."  (Def. Supp. Br. at 5, ECF No. 188).  Defendants' overbreadth argument restates their theory that A-S's acquisition of MSG also transferred the prior permission obtained by Allscripts to A-S.  The class is not overbroad because, as discussed more fully below, Defendants have the burden of proving "prior express invitation or permission." *See Thrasher–Lyon v. Ill. Farmers Ins. Co.*, 861 F. Supp. 2d 898, 905 (N.D. Ill. 2012) (noting that the TCPA contains the affirmative defense of express consent).  Any question regarding prior express permission can be answered on a class-wide basis.  Therefore, the class is ascertainable and not overbroad.

### ii.    Numerosity

Numerosity is not disputed.  The court notes that to meet the numerosity requirement, PHI must show that the proposed class is "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "[A] plaintiff does not need to demonstrate the exact number of class members as long as a conclusion is apparent from good-faith estimates." *Barragan v. Evanger's Dog and Cat Food Co.*, 259 F.R.D.  330, 333 (N.D. Ill. 2009).  Although there is no bright-line rule for exactly how many members are enough to establish a class, "[g]enerally, where class members number at least 40, joinder is considered impracticable and

numerosity is satisfied." *Oplchenski v. Parfums Givenchy, Inc.*, 254 F.R.D. 489, 495 (N.D. Ill. 2008); *see also Pruitt v. City of Chicago*, 472 F.3d 925, 926–27 (7th Cir. 2006) ("Sometimes 'even' 40 plaintiffs would be unmanageable."); *Swanson v. Am. Consumer Indus., Inc.*, 415 F.2d 1326, 1333 n.9 (7th Cir. 1969) (holding that a proposed class of 40 was "a sufficiently large group to satisfy Rule 23(a)").

PHI's forensic expert's report shows that A-S' broadcast that began on February 10, 2010 until February 28, 2010 contained records of 15,669 total fax transmissions to 15,666 unique fax numbers, a total of which 11,422 transmissions are documented by the computer log as fully received error-free transmissions. [Pls. Class Cert. Memo. at 7, ECF No. 147-1.] Numerosity is satisfied.

### iii.    Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." To establish commonality, the class representative must demonstrate that members of the class "have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S. Ct. 2541, 2551 (2011). Commonality requires that all of the class members' claims "depend upon a common contention" that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." [*Id.*]

PHI argues that the commonality requirement is satisfied as the claims of the class arise out of a common nucleus of fact because Defendants sent the same Fax to all class members. PHI argues that there are four common legal issues to be determined on a class-wide basis: (1) whether the Fax is an "advertisement" as defined by 47 U.S.C. § 227(a)(5) and 47 C.F.R. § 64.1200(f)(1); (2) whether each Defendant is a "sender" of the Fax, as defined by 47 C.F.R. §

64.1200(f)(10); (3) whether Defendants "willfully or knowingly" violated the TCPA or the regulations "prescribed under" it, allowing the Court to increase statutory damages from the automatic $500 per violation to $1,500 per violation; and (4) whether FCC's retroactive waiver bars PHI's (and the Class's) TCPA claim. There are three additional questions that may need to be answered: (5) whether Allscripts obtained prior express permission from the class members to receive fax advertisements; (6) whether the class members' prior express permission to receive fax advertisements from Allscripts encompassed A-S; (7) whether A-S obtained class members' express permission based on its acquisition of Allscripts' MSG.

Defendants argue that determining the scope of prior express invitation or permission will require inquiry into "(1) the facts and circumstances surrounding consent, (2) the intent of each putative class member when providing consent, (3) the context in which each putative class member provided consent, and (4) the putative class members' understanding of Allscripts, Allscripts' MSG, and the sale of the MSG to A-S Medication." [Def. Resp. at 22, ECF No. 171.] Defendants contend that these factual questions cannot be answered by class-wide evidence.

The TCPA and the FCC require a sender to obtain "prior express invitation or permission" from recipients before sending a fax. 21 F.C.C.R. 3787, 3808 (In the Matter of Rules and Regulations Implementing the [TCPA]) (Apr. 6, 2006). Defendants raise prior express invitation or permission as an affirmative defense, so it is Defendants' burden to adduce supporting evidence. *Id.* at 3794 (noting that the entity sending the fax is in the "best position" to have records showing the relationships, "such as purchase agreements, sales slips, applications and inquiry records"); *Id.* at 3807 (senders "must be prepared to provide clear and convincing evidence of the existence of such permission."); *see also Grant v. Capital Mgmt. Servs., LP.*, 449

Fed.Appx. 598, 600 n. 1 (9th Cir. 2011) (unpublished); *see also Thrasher–Lyon*, 861 F.Supp.2d at 905 (noting that the TCPA contains the affirmative defense of express consent).

The "context" within which a customer gives its permission is important in determining the scope of prior express invitation or permission. "[T]he FCC considers the scope of a consumer's consent to receive calls to be dependent on the context in which it is given." *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 488 (N.D. Ill. 2015) (citing *Kolinek v. Walgreen Co.*, No. 13 C 4806, 2014 WL 3056813, at *3 (N.D. Ill. July 7, 2014)). "Consent for one purpose does not equate to consent for all purposes." *Kolinek*, 2014 WL 3056813, at *4; *see also Baisden v. Credit Adjustments, Inc.*, 813 F.3d 338, 343 (6th Cir. 2016) ("[T]he context of the consent provided is critical"); In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 30 F.C.C. Rcd. 7961, 7990 (2015) ("[T]he scope of consent must be determined upon the facts of each situation.").

The court can determine class members' consent through class-wide proof. *See Buonomo v. Optimum Outcomes, Inc.*, 301 F.R.D. 292, 299 (N.D. Ill. 2014) (denying motion to strike class claims as immature because discovery would reveal whether proposed class members' claims are susceptible to generalized proof); *cf. Gene & Gene L.L.C. v. BioPay, L.L.C.*, 541 F.3d 318, 329 (5th Cir. 2008) (reversing the trial court's class certification because the defendant had "culled fax numbers from a variety of sources over a period of time, such that class-wide proof of consent [wa]s not possible"). Defendants acknowledge that all of the fax numbers came from Allscripts' Salesforce database. [Def. Resp. at 17, 20, ECF No. 171. ("Exhibit A was faxed to a list of A-S Medication and Allscripts customers and prospective customers that was generated from Allscripts's Salesforce database.").] Furthermore, according to Defendants, "Allscripts had a policy and practice of obtaining consent prior to sending any promotional or informational

faxes to clients or prospects." [Def. Resp. at 20, ECF No. 171.]; [Def. Supp. at 4, ECF No. 188. ("Allscripts' policy was to obtain prior express permission to send fax advertisements about its products and services").] Although PHI contests whether such practice existed, [Pls. Reply at 9, ECF No. 175], Defendants' arguments strongly suggest that class-wide proof is available to prove consent. Defendants do not contend that each customer gave permission under differing circumstances. Defendants argue that Allscripts received permission from the class members to send them faxes. As evidence of this permission, Defendants state that if the database "included a fax number for a particular entity, it was only because that entity voluntarily provided its fax number to Allscripts, along with permission to fax something. [Def. Resp. at 7, ECF No. 171.] Defendants' argument lacks specificity in that it does not explain the circumstances in which consent was obtained.

Further, "Seventh Circuit precedent [] teaches that commonality and typicality are generally met where, as here, a defendant engages in a standardized course of conduct vis-a-vis the class members, and plaintiffs' alleged injury arises out of that conduct." *Hinman v. M & M Rental Ctr., Inc.*, 545 F. Supp. 2d 802, 806–07 (N.D. Ill. 2008) (citing *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998); *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)). From the information provided by Defendants, it appears that Allscripts engaged in a "standardized course of conduct" in obtaining the consent, if consent was obtained. *See Hinman*, 545 F. Supp. 2d at 806. It may turn out that "[f]rom the customer's perspective, there was little—if any—difference between Allscripts' MSG and A-S Medication." [Def. Resp. at 21, ECF No. 171.]; *see, e.g.*, *Baird v. Sabre, Inc.*, 636 F. App'x 715, 716 (9th Cir. 2016) (finding that the plaintiff had consented to receive text message from the airline's vendor when the vendor sent a text message regarding her reservation with the airline). Yet, this question is properly

reserved for the factfinder to determine class-wide when Defendants will have the opportunity to provide evidence regarding the circumstances under which Allscripts' customers provided their fax numbers.

Finally, while Defendants argue that individual questions regarding consent, and the manner in which it was given by class members, create individual questions of fact, PHI argues that, *even if* consent was given by some or all class members, consent cannot be transferred from Allscripts to A-S by way of acquisition. Whether consent is transferrable is a question common to all class members that can be answered on a class-wide basis and must be answered before the court can address whether individual questions regarding consent exist.

### iv.    Typicality

"A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998). Typicality is closely related to commonality. *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). Typicality can exist "even if there are factual distinctions between the claims of the named plaintiffs and those of other class members." *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009). "Typicality requires 'enough congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group.'" *Rosen Family Chiropractic, S.C. v. Chi-Town Pizza on Division St., Inc.*, No. 11 C 6753, 2015 WL 638522, at *3 (N.D. Ill. Feb. 13, 2015) (quoting *Spano v. The Boeing Co.*, 633 F.3d 574, 586 (7th Cir. 2011)).

As to typicality, PHI contends that it received an unsolicited fax within the time provided in the class definition without its prior express permission or invitation. It is therefore a member

of the class and its claim is typical of the other members. Defendants acted consistently toward

the entire class, and all claims, including PHI's, are based on the same legal theory, i.e.,

transmission of faxes in violation of the TCPA. Therefore, typicality and commonality are

satisfied.

> **v.** **Adequacy**

Plaintiffs must show that the "representative parties will fairly and adequately protect the

interests of the class." Fed. R. Civ. P. 23(a)(4). There are typically two components to the

adequacy analysis: (1) the adequacy of the named Plaintiff's counsel; and (2) the adequacy of

representation provided in protecting the different, separate, and distinct interests of the class

members. *Retired Chicago Police Ass'n*, 7 F.3d at 598; *see also Spano*, 633 F.3d at 586–87. In

order to be an "adequate representative," the named Plaintiff must not have "antagonistic or

conflicting claims." *Retired Chicago Police Ass'n*, 7 F.3d at 598. The typicality and adequacy

inquiries are linked: "typicality insures the class representative's claims resemble the class'

claims to an extent that an adequate representation can be expected." *Ellis v. Elgin Riverboat

Resort*, 217 F.R.D. 415, 429 (N.D. Ill. 2003) (internal citation omitted). Here, the claims of the

named Plaintiff are the same as those of the proposed class members—that PHI received an

unsolicited fax in violation of TCPA. In addition, there appears to be no individual defenses or

other claims that would impede the named Plaintiff's ability to adequately represent the interests

of the class members.

Finally, there is no reason to doubt that Plaintiffs' counsel will adequately represent the

interests of the class members.

**B.      Rule 23(b) Class Certification Requirements**

In addition to meeting the four Rule 23(a) factors, Plaintiffs must also demonstrate that their proposed class meets the requirements of Rule 23(b)(3), which requires Plaintiffs to demonstrate that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other methods for fairly and efficiently adjudicating the controversy."  Fed. R. Ci*v*. P. 23(b)(3).  In applying these standards, courts focus on "the substantive elements of [P]laintiffs' cause of action and inquire into the proof necessary for the various elements."  *Simer v. Rios*, 661 F.2d 655, 672 (7th Cir. 1981).

**i.      Predominance**

Predominance is similar to commonality but requires a "far more demanding" inquiry than "Rule 23(a)'s commonality requirement."  *Anchem Prods., Inc. v. Windsor*, 521 U.S.  591, 624 (1997).  The court thus must compare the role of common issues of law and fact with the role of individual issues.  *Messner*, 669 F.3d at 814.  Rule 23(b)(3)'s predominance requirement is satisfied when "common questions represent a significant aspect of [a] case and . . . can be resolved for all members of [a] class in a single adjudication."  *Id.* (*quoting* 7AA Wright & Miller, Federal Practice & Procedure § 1778 (3d ed.  2011)).  More simply, common questions predominate if a "common nucleus of operative facts and issues" underlies the claims brought by the proposed class.  *In re Nassau County Strip Search Cases*, 461 F.3d 219, 228 (2nd Cir. 2006), *quoting Waste Mgmt.  Holdings, Inc.  v. Mowbray*, 208 F.3d 288, 299 (1st Cir. 2000).  However, individual questions need not be absent.  *Messner*, 699 F.3d at 814.  The rule requires only that individual questions not predominate over the common questions affecting the class as a whole. (*Id.*)

Defendants argue that individual questions of fact pertaining to consent predominate over common issues of law and fact.  More specifically, Defendants argue that whether class members gave consent to Allscripts, and in turn A-S, to receive fax messages is a question that cannot be resolved on a class-wide basis and must be answered on an individual basis.  Defendants' argument fails for several reasons.

As noted throughout this opinion, Defendants argue that Allscripts received permission from the class members to send them faxes.  Again, as evidence of this permission, Defendants state that if the database "included a fax number for a particular entity, it was only because that entity voluntarily provided its fax number to Allscripts, along with permission to fax something. [Def. Resp. at 7, ECF No. 171.]  Defendants have failed, at this stage, to explain the circumstances in which consent was obtained.

Courts determine whether issues of individualized consent defeat commonality and predominance in a TCPA cases on a case-by-case basis after evaluating the specific evidence available to prove consent.  *See Jamison v. First Credit Servs., Inc.*, 290 F.R.D. 92, 106–07 (N.D.Ill. 2013) (collecting cases).  Where Defendants "set[] forth specific evidence showing that a significant percentage of the putative class consented to receiving calls on their cellphone," courts have found that issues of individualized consent predominate any common questions of law or fact.  *Jamison*, 290 F.R.D. at 107. On the other hand, where Defendant "fail[s] to set forth this specific evidence and instead only make[s] vague assertions about consent, then individualized issues regarding consent will not predominate over common questions of law or fact so as to prevent class certification." *Id.*  Here, it is undisputed that A-S never received explicit consent to send faxes to the putative class members.  Rather, A-S argues that it had consent by way of its acquisition of Allscripts.  However, as stated, evidence has not been

proffered that Allscripts obtained permission or, if it did obtain permission, the manner in which it obtained permission.

Even if Allscripts obtained permission from class members to send fax advertisements, common issues of law and fact still predominate. Before the court can address the issue of individual consent, if the issue exists, PHI argues that consent cannot be transferred from Allscripts to A-S. Therefore, the question of whether consent can be transferred is a common question to all class members that can be answered on a class-wide basis.

Moreover, PHI argues that, even if the putative members gave its permission to Allscripts to receive faxes, and even if that permission was transferrable to A-S, the Fax failed to include specific "opt-out" language, which is a violation of 47 C.F.R. § 64.1200(a)(4)(iii). Because *all* of the faxes failed to include "opt-out" language, PHI argues that the fax transmission in question violated the TCPA, regardless of consent. Defendants, in response, argue that the waiver they obtained from the FCC precludes suit. However, PHI has presented sufficient authority that the question of whether waiver precludes suit is a question that can be resolved on a class-wide basis.

### ii. Superiority

To satisfy Rule 23(b)(3), PHI must show that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Ci*v*. P. 23(b)(3). Defendants do not separately object to superiority other than their objection to predominance as discussed above. The factors in determining superiority include (1) class members' interests in pursuing individual actions, (2) any existing individual litigation, (3) judicial efficiency, and (4) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(A)–(D). Here, class members have little economic incentive to sue individually, there are no existing individual

lawsuits, and judicial efficiency is best served by adjudicating all claims in one proceeding. Therefore, the superiority requirement is satisfied.

Plaintiffs have demonstrated that their proposed class meets the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a) and the predominance and superiority requirements of Rule 23(b)(3). Their motion to certify a class for TCPA claims is granted.

### III.    CONCLUSION

For the foregoing reasons, PHI's motion is [147] granted. Plaintiffs' TCPA claims are certified as a class action. The parties are ordered to meet and confer regarding the identities and other pertinent information for all persons in the class defined by Plaintiffs. The parties are also ordered to meet and confer regarding a mutually agreeable notice that is to be submitted to the court on or before October 7, 2016. The matter is set for status on October 12, 2016 at 9:30 a.m.


Date:   September 27, 2016                                           _____/s/_____

                                                                    Joan B. Gottschall
                                                                    United States District Judge