IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PHYSICIANS HEALTHSOURCE, INC., an Ohio corporation, individually and as the representative of a class of similarly-situated persons, <br><br> Plaintiff, <br><br> vs. <br><br> A-S MEDICATION SOLUTIONS LLC, WALTER HOFF and JOHN DOES 1-10, <br><br> Defendants. | Case No. 12 C 5105 |

### MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Changes in technology have relegated the fax machine to a marginal role virtually everywhere but the courtroom. There, the fax machine reclaims some of its old luster, given its role in lawsuits against defendants alleged to have burdened fax machines and their owners with unwanted ads. Under the Telephone Consumer Protection Act (TCPA), it is unlawful to fax an "unsolicited advertisement." 47 U.S.C. § 227(b)(1)(C). The statute defines an unsolicited advertisement as material advertising the commercial availability or quality of property, goods or services transmitted to any person "without that person's prior express invitation or permission, in writing or otherwise." *Id.* § 227(a)(5).

The plaintiff in this case, Physicians Healthsource, Inc. (PHI), contends that A-S Medication Solutions LLC (A-S Solutions) violated the TCPA by faxing an advertisement

to the members of the class PHI represents without their prior express permission. PHI also contends that Walter Hoff, the CEO of A-S Solutions, is personally liable. Judge Joan Gottschall, to whom this case was previously assigned, certified a class of similarly situated plaintiffs. PHI has moved for summary judgment on liability.

## Background

A-S Solutions acquired a portion of another business, Allscripts, via a sale of assets. After A-S Solutions acquired this segment of Allscripts, it sent a fax to the 15,666 numbers Allscripts had compiled for its customers. A-S Solutions contends that Allscripts only had the fax numbers of customers who permitted such faxes. So, to fully explain this suit, the Court begins by reviewing Allscripts' practices, even though it is not a party to this case.

Allscripts was in the business of medication dispensing. In providing this service, it frequently sent faxes to its customers. Brian Moffett, the Rule 30(b)(6) witness for Allscripts, testified that the company tracked its customers through a customer relationship management software known as Salesforce. In Salesforce, a customer like PHI could manage its own account, which enabled it to add or delete its fax number. The customer could also check a box that indicated the customer did not want to receive communications. PHI did not check the box.

Moffett also testified that Allscripts had a policy of obtaining a customer's permission before sending faxes. (In repeating the parties' use of the term "permission" here, the Court does not reach any legal conclusions.) He described a hypothetical situation in which Allscripts would obtain customer permission to send a fax:

> So I'm working with a client, and I need to show them how to do something. I would type it out on a piece of paper, and I would say, hey, can I fax this

> to you. They would say yes. We gained permission. Boom. I'd send it over to them.

D.E. 270, Pl.'s Ex. 3 at 26-27 (Moffett Dep.). Likewise, Moffett testified, if a prospective customer wanted additional information, Allscripts would "always ask for permission" before sending a fax. *Id.* at 43.

On March 2, 2009, A-S Solutions agreed to purchase the medication-dispensing portion of Allscripts' business. Allscripts continued to operate the remainder of its business after the sale. Lauren McElroy, the A-S Solutions Vice President of Marketing, drafted a fax to send to the former Allscripts customers, targeted to a list of recipients generated from Allscripts' Salesforce database. McElroy testified that Walter Hoff, the CEO of A-S Solutions, directed her on what to write in the fax that produced this litigation.

On February 10, 2010, McElroy e-mailed another A-S Solutions employee, Marcello Barth: "[Hoff] says Good to Go! Start sending them out and let me know when the list is complete." Pl.'s LR 56.1 Resp. to Defs.' Stat. of Add'l Facts ¶ 33. Barth, using a computer program, sent the fax to 15,666 fax numbers from Salesforce. The fax was successfully delivered to 11,422 numbers. A fax was successfully transmitted to PHI's number on February 18, 2010. The fax advertised PedigreeRx, a new service A-S Solutions offered, provided A-S Solutions' contact information, and referenced "The A-S Medication Solution Quality Service Guarantee." D.E. 270, Pl.'s Ex. 1 (Fax). A-S Solutions itself never sought or obtained permission from any of the recipients before sending the fax. As Hoff later testified, he believed "[A-S Solutions] didn't need to. We were part of Allscripts' joint marketing arrangement." Defs.' LR 56.1 Resp. to Pl.'s Stat. of Facts ¶ 47.

PHI filed suit in state court, and A-S Solutions removed the case to federal court.[1] The suit was originally assigned to Judge Joan Gottschall. A-S Solutions moved to dismiss PHI's complaint twice, arguing first that PHI failed to allege an injury and then that PHI's personal stake in the litigation had been rendered moot by a full settlement offer. Judge Gottschall denied both motions. Judge Gottschall then granted PHI's motion to certify the following class:

> All persons or entities who were successfully sent the Fax providing "A-S Medication Solutions, LLC, Quality Service Guaranteed," and "Ask about our new PedigreeRx Solution!," between February 10, 2010 and February 28, 2010.

D.E. 202 at 11 (Sept. 27, 2016 Mem. Op. & Order). PHI moved to strike affidavit evidence that it contends was disclosed after the close of discovery; Judge Gottschall denied this motion. On October 16, 2017, the case was reassigned to the undersigned judge pursuant to 28 U.S.C. § 294(b).

## Discussion

As indicated earlier, it is unlawful to send an unsolicited advertisement via fax. An advertisement is "unsolicited" if it is "transmitted to [a] person without that person's prior express invitation or permission, in writing or otherwise." 42 U.S.C. § 227(a)(5), (b)(1)(C). PHI has moved for summary judgment on the defendants' liability, which it separates into four issues: (1) whether the fax is an advertisement, as defined by the TCPA; (2) whether A-S Solutions and Hoff are senders of the fax; (3) whether the fax was actually sent; and (4) whether A-S Solutions obtained prior express permission to

---

[1] PHI filed a separate, ongoing suit against Allscripts over unrelated faxes. *Physicians Healthsource, Inc. v. Allscripts Health Sols., Inc.*, No. 12 C 3233 (N.D. Ill.).

4

send the fax.[2]

PHI has also moved for summary judgment on the personal liability of Hoff, the CEO of A-S Solutions. To obtain summary judgment, PHI must establish that there is no "genuine, triable issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Defendants can defeat summary judgment by showing "a rational trier of fact [could] find for the non-moving party[.]" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

As a prefatory note, the TCPA directs the Federal Communications Commission to "prescribe regulations to implement the requirements" of subsection § 227(b). 47 U.S.C. § 227(b)(2); *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2014). In addition, a final FCC order interpreting the TCPA is binding on a district court under the Hobbs Act. *See CE Design, Ltd. v. Prism Bus. Media, Inc.*, 606 F.3d 443, 447-50 (7th Cir. 2013).

## I. Advertisement

First, the fax was an advertisement. An advertisement under the TCPA is "any material advertising the commercial availability or quality of any property, goods, or services." 47 U.S.C. § 227(a)(5); 47 C.F.R. § 64.1200(f)(1). The fax references "The A-S Medication Solution Quality Service Guarantee," which promises customers they can expect "Experience," "Quality," "Products & Service," "Customer Services," and "Value." D.E. 270, Pl.'s Ex. 1 (Fax). There is no issue for trial here; a fax describing the quality and value of the sender's products and services is unquestionably an advertisement.

---

[2] For ease of reference, the Court employs "prior express permission" as shorthand for "prior express invitation or permission."

5

**II.      Sender**

Second, the defendants were senders of the fax.  A "sender" is "the person or entity on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement."  47 C.F.R. § 64.1200(f)(10).  The fax was sent on behalf of each of the defendants.  The undisputed evidence shows that Hoff, the owner and CEO of A-S Solutions, drafted and authorized sending the fax, which advertised the goods and services that A-S Solutions provided, including its new PedigreeRx service.  No reasonable jury could conclude that the fax was not sent on the defendants' behalf.

**III.     Sending**

Third, the February 2010 fax was sent via computer to the plaintiffs' fax machines.  The defendants do not contest that 11,422 faxes were successfully transmitted.

**IV.      Prior express permission**

    **A.      Burden of persuasion**

The parties' primary dispute involves A-S Solutions' invocation of the defense of prior express permission.  This is an affirmative defense on which A-S Solutions bears the burden of persuasion.  *Physicians Healthsource, Inc. v. A-S Medication Sols., LLC*, 318 F.R.D. 712, 722 (N.D. Ill. 2016).  The parties dispute the applicable standard.  PHI contends that A-S Solutions must establish prior express permission by clear and convincing evidence; A-S Solutions argues it must be established by a preponderance of the evidence.

PHI relies on a statement by the FCC that "[s]enders that claim their facsimile

advertisements are delivered based on the recipient's prior express permission must be prepared to provide clear and convincing evidence of such permission." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 21 FCC Rcd. 3787, 3807 ¶ 36 (Apr. 6, 2006) ("2006 Order").[3] It is not at all clear from this statement, however, that the agency intended to establish the burden of persuasion for the prior express permission defense. When the FCC discussed prior express permission in detail later in the 2006 Order, it made no mention of the level of persuasion required, focusing instead on how a claim of permission should be verified. *Id.* at 3811-12.

Courts, not administrative agencies, generally establish the burden of persuasion when, as in the TCPA, Congress is silent. In *Woodby v. INS*, 385 U.S. 276 (1966), the Supreme Court reviewed the burden of persuasion applied in two deportation proceedings. In one proceeding, the immigration officer arguably applied a reasonable doubt standard; in the other, the agency did not clearly identify the burden it applied. *Id.* at 279. The Supreme Court noted that, because "Congress has not addressed itself to the question of what degree of proof is required," the Court was faced with "the kind of question which has traditionally been left to the judiciary to resolve[.]" *Id.* at 284. *See also Steadman v. SEC*, 450 U.S. 91, 95 (1981) ("Where Congress has not prescribed the degree of proof which must be adduced . . . this Court has felt at liberty to prescribe the standard[.]") (internal punctuation and citation omitted); *Mach Min., LLC v. Sec. of*

---

[3] PHI incorrectly states that Judge Gottschall "held" that this standard was required in the order granting class certification. Rather, Judge Gottschall's opinion *noted* the FCC order that PHI cites, and her comment was not essential to the grant of class certification.

7

*Labor, Mine Safety and Health Admin.*, 728 F.3d 643, 647 (7th Cir. 2013) (same).

With these considerations in mind, the Court is unconvinced that the FCC's 2006 Order establishes the level of persuasion required. Nor is the Court otherwise persuaded that clear and convincing evidence is required to establish the prior express permission defense. As A-S Solutions argues, the preponderance of evidence standard is generally the proper standard for "a monetary dispute between private parties." *Addington v. Texas*, 441 U.S. 418, 423 (1979). The Court concludes A-S Solutions is required to demonstrate prior express permission by a preponderance of the evidence, not by clear and convincing evidence.

The Hobbs Act does not bar the Court from deciding this point. 28 U.S.C. § 2342(1) ("The court of appeals . . . has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of all final orders of the Federal Communications Commission . . . "). The Act "allows uniform, nationwide interpretation of the federal statute by the centralized expert agency created by Congress to enforce the TCPA." *CE Design, Ltd.*, 606 F.3d at 450. Where, as here, the Court is considering an agency's "freestanding" resolution of a question traditionally left to the judiciary, the Hobbs Act does not bar the Court from reaching a different standard than the FCC. *Cf. Ira Holtzman, CPA & Assocs. Ltd. v. Turza*, 728 F.3d 682, 688 (7th Cir. 2013) (an FCC determination that amounts to "a freestanding declaration untied to an adopted text should be ignored).

## B. The evidence

PHI contends that it is undisputed that A-S Solutions did not obtain prior express permission. A-S Solutions argues that Allscripts obtained prior express permission and

8

that this permission is valid for A-S Solutions. Before addressing the argument in detail, the Court notes that the FCC's 2006 Order says that "the sender must obtain the prior express invitation or permission from the consumer" before faxing an ad. 47 U.S.C. § 227(a)(5); 47 C.F.R. § 64.1200(a). Yet A-S Solutions and Hoff do not contend that *they* obtained express permission from any of the recipients of the fax before sending it to them. Under the 2006 Order's plain language, it would appear, A-S Solutions and Hoff cannot avail themselves of the prior express consent defense.

A-S Solutions (a term that the Court will use for the remainder of this section to identify both A-S Solutions and Hoff) contends it may rely upon the permission that Allscripts obtained. In response, PHI contends that A-S Solutions has not established that Allscripts ever obtained prior express permission. Second, PHI argues that, even if Allscripts had obtained permission, the permission is not valid for A-S Solutions. Third, PHI asserts that A-S Solutions failed to comply with another FCC regulation and that its failure to do so vitiates any permission it might have obtained. PHI's first argument entitles it to summary judgment, so the Court need not resolve the other two points.

A-S Solutions has not presented evidence that would permit a reasonable jury to find that Allscripts obtained prior express permission from the recipients of the fax. The TCPA does not define the term "prior express invitation or permission." *See* 47 U.S.C. § 227(a)(5). The FCC has clarified the term in regulations, stating that "[e]xpress permission to receive a faxed ad requires that the consumer understand that by providing a fax number, he or she is agreeing to receive faxed advertisements." *In the Matter of Rules and Regs. Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14129 ¶ 193 (July 3, 2003) ("2003 Order"). The FCC stated in the 2006

9

Order that it was "concerned" that senders might "erroneously claim[]" they obtained permission to send faxes without ever doing so; it therefore required senders to take "reasonable steps" to "ensure that such permission can be verified." 2006 Order, 21 FCC Rcd. at 3812 ¶ 46.

The evidence A-S Solutions offers to show that Allscripts obtained express permission—that Allscripts customers extended permission with the understanding they were agreeing to receive faxed ads—is insufficient to permit a reasonable finder of fact to find in A-S Solutions' favor on the affirmative defense.[4] First, A-S Solutions offers deposition testimony by Brian Moffett, the director of product support at Allscripts, who testified as Allscripts' Rule 30(b)(6) witness. Moffett testified that Allscripts would "always ask permission" prior to sending faxes. Pl.'s Ex. 3 at 45 (Moffett Dep.). But the "permission" that Moffett described is not the "prior express permission" the law requires. Consider how Moffett described the way in which Allscripts might have obtained permission from one of its customers:

> So I'm in support, and this is valid in 2010. I would say, hey, I've got something I need to send you. Example would be there's a hurricane. We used to send hurricane notices out to the states affected to say here is what you needed to do for a disaster and, you know, to prepare for a disaster for data integrity, and we would say, hey, I have your fax number here. . . . Is that valid? Yes. . . . Can I send you this fax? Yes. Boom.

*Id.* at 51-52. This does not describe permission in which the customer "understand[s] that by providing a fax number, he or she is agreeing to receive faxed advertisements."

---

[4] As PHI notes, A-S Solutions failed to provide the "short numbered paragraphs" that the Local Rules envision in its Local Rule 56.1(b)(3)(C) statement, particularly in the paragraphs relating to this issue. The Court was able to review A-S Solutions' statement, but it did not do itself any favors by forcing the Court to parse its sprawling statements of fact. *See, e.g.,* Defs.' LR 56.1 Stat. of Add'l Facts ¶ 20.

2003 Order, 18 FCC Rcd. at 14129 ¶ 193. Moffett offered nothing better than this to flesh out how Allscripts supposedly obtained "express permission" to send faxed advertisements.

The second type of evidence that A-S Solutions cites likewise falls short of the mark. A-S Solutions notes that Allscripts employed a Salesforce portal in which customers could add or remove their fax numbers and indicate that they did not wish to receive communications from Allscripts. PHI did not check the box. But this does not get A-S Solutions any closer to showing Allscripts obtained prior express permission. The simple fact of adding a fax number into Salesforce does not show or even permit a reasonable inference that the customer agreed to receive faxed ads. The customer may have simply been filling in all of the blanks or may have intended only to receive ordinary fax messages in the course of business, as opposed to advertisements. Moreover, the FCC has precluded using a "negative option"—that is, giving a recipient the option not to receive faxed ads—to establish express permission. 2006 Order, 21 FCC Rcd. at 3811 ¶ 45 n.168 (a "negative option" is one in which "the sender presumes consent unless advised otherwise."). In other words, a recipient has to opt in, not simply decline to opt out. The "no check in the box" evidence is arguably evidence of not opting out, but it is most definitely not competent evidence of actually opting in, which is what is required.

Third, A-S Solutions cites deposition testimony by a PHI employee and affidavits from about a dozen class members that it contends shows they provided prior express permission. A-S cites the following deposition testimony by a PHI employee named Gearline Monhollen:

> Q: . . . Did you communicate with Misys and Allscripts through any other means?
>
> A: No. Well, other than faxing maybe. Like if – they would call me and say, you know, "Can I fax this over to you?" I would say, "Yes." And I would left staff know I was expecting a fax. And it would come. And I could complete whatever it was that they gave me. And I would fax it back.
>
> . . .
>
> Q: . . . And would Misys or Allscripts fax you various types of materials and information?
>
> A: Yes.
>
> Q: And you contented [sic] to receive those faxes from Misys and/or Allscripts?
>
> A: Permission wasn't asked. They arrived in – Cathy Curtis went through the faxes. And if it was due to purchasing disks or due to an upgrade or system down or, you know, whatever it may be, it was given to me to acknowledge – to respond to, if I needed to.
>
> Q: Right. But I just want to back [sic] and clarify what you said earlier. That you would ask them for information. And you would ask them to send you information. And they would sent it to you by fax?
>
> A: Well, they would say, "Can we send this over to you by fax?" And I would say, "Yes."

Defs.' Ex. L at 68-69. This is hardly evidence of prior express permission for Allscripts to send *advertisements*; there is no indication of what materials Monhollen was talking about (not to mention the fact that she squarely testified that "[p]ermission wasn't asked"). And the other excerpt of Monhollen's testimony cited by A-S Solutions, *see* Pl.'s LR 56.1 Resp. to Defs.' Stat. of Add'l Facts ¶ 21, on its face does not even reference Allscripts. In addition, the deposition testimony by PHI's principals cited by A-S Solutions—an affirmative answer by one to a question of whether a fax "would have been welcome," *see* Defs.' Ex. M at 228, and testimony by the other that "it would be

12

reasonable to get additional information," *see* Defs.' Ex. C at 130—comes nowhere close to evidence from which prior express permission to send the fax at issue in this case reasonably could be inferred.

The class member affidavits fall into two categories. The first set—nine of them—were obtained in the *Allscripts* lawsuit. Eight of these are cookie-cutter declarations in which the declarant says:

> We have used Allscripts' (or one of its predecessor's) products (among others) within at least the past six years. I do not specifically remember receiving any particular faxes from Allscripts (or a predecessor) promoting its (or others') products or services, but in general, I have consented to receiving such communications from Allscripts and others, in the past and currently as well.

*See* Defs.' Grp. Ex B. The ninth says the same thing but without the parenthetical references to Allscripts' predecessor(s). *Id.* None of these declarations says anything about *prior* permission, and they don't indicate *express* permission. They cannot reasonably be read as saying anything more than the proposition that, after the fact, the recipient was okay with receiving a fax—which is not enough to permit a reasonable jury to find in A-S Solutions' favor on the prior express permission defense.

Finally, A-S Solutions cites five declarations it obtained in the present case. They are equally weak, equivocal, or off-point. One declarant says that she doesn't recall receiving any faxed ads, but if she did she would have given permission and would have no objection. *See* Defs.' Ex. G ¶¶ 6-7. A second says that she doesn't specifically giving Allscripts or A-S Solutions permission to send faxed ads, but from her custom and practice "I would have given" such permission. Defs.' Ex. I ¶ 5. A third says that she "consented to receive Allscripts' product information via fax at the beginning of our business relationship." Defs.' Ex. H ¶ 3. Another declarant says that

13

when her employer's company "provided its fax number to Allscripts, it agreed to and consented to receive faxes from Allscripts regarding Allscripts' products and services." Defs.' Ex. K ¶ 7. And the fifth says that in 2007, her company started purchasing from Allscripts. "At that time I wanted to receive information regarding these products and services, and consented to receive this information by fax." The company "agreed to and consented to receive faxes from Allscripts regarding Allscripts' products and services." Defs.' Ex. J ¶¶ 3, 5. None of these declarations would permit a reasonable fact finder to find *prior, express* permission.

A-S Solutions' evidence does not create a triable dispute. At a general level, it involves declarants who state they consented to receive information, in some cases product information, from Allscripts. It is uniformly too thin to permit a reasonable jury to conclude that "consented," as used in the declarations, meets the legal definition of "prior express permission." *See* 2006 Order, 21 FCC Rcd. at 3811 ¶ 45. Specifically, a statement that a recipient "consented" to or "permitted" Allscripts' faxes does not permit a reasonable fact finder to determine the recipient understood he or she was expressly giving, in advance, permission to send faxed advertisements. *See Physicians Healthsource, Inc. v. Stryker Sales Corp.*, 65 F. Supp. 3d 482, 496 (W.D. Mich. 2015) ("An 'express invitation or permission' is something more than the absence of objection to an established practice, or even a conscious choice to accept an established practice of allowing faxes because it seems less onerous at the time than taking the initiative to send a separate communication opting out of the practice."). Allscripts attempted a similar argument in PHI's suit against that company; it was unsuccessful. *See Physicians Healthsource, Inc. v. Allscripts Health Sols., Inc.*, 254 F. Supp. 3d 1007,

1035 (N.D. Ill. 2017) (Cole, J.) (finding similar declarations unpersuasive, as "there is no way to know whether any purported 'consent' qualified as express permission").

Most of these declarations are insufficient for a second reason: they do not describe the content of the faxes that the declarants purportedly consented to receive. To provide prior express permission, a recipient must understand that he or she has agreed in advance to receive *faxed advertisements.* 2003 Order, 18 FCC Rcd. at 14129 ¶ 193. Just as a shopper might desire information from a retailer about a clothing order in transit without wishing to receive ads describing other products that the retailer sells, an Allscripts customer might permit faxes about the products or services it is using without agreeing to receive faxed advertisements. Finally, the declarations in which the class member states she does not recall whether she provided permission to Allscripts, but would have, are insufficient to create a genuine dispute that the class member *expressly* provided permission.

Taken together, A-S Solutions' evidence does not create a triable issue of material fact. A reasonable factfinder might be able to conclude that some class members permitted Allscripts to send them particular faxes, but not that class members gave prior express permission to Allscripts to fax them advertisements.

The Court observes that it is not surprising that the evidence A-S Solutions has provided misses the mark. A-S Solutions concedes that *it* never obtained prior express permission to send faxed advertisements. Rather, it relies, and says it relied at the time, on whatever Allscripts had done before. But there is no indication that Allscripts ever attempted to document, contemporaneously or otherwise, whatever permissions it claimed to have obtained. Perhaps just as importantly, A-S Solutions has not pointed in

its brief to any evidence that it did any real due diligence on this point at the time it purchased Allscripts' business other than simply taking Allscripts' word for it. It is unsurprising that A-S Solutions would be able to come up with, after the fact, evidence relevant to its TCPA liability that it evidently never sought at the time.

PHI also contends that senders must contemporaneously document the permission they obtain and that Allscripts' failure to record permissions dooms A-S Solutions' argument. Pl.'s Mem. in Supp. of Summ. J. at 12. Because A-S Solutions failed to present sufficient evidence that Allscripts customers expressly permitted faxed ads, the Court need not resolve whether the law obligates A-S Solutions to present particular evidence recording Allscripts' prior express permission.

In sum, PHI has established the requirements for TCPA liability, and defendants have not presented evidence that would support a finding in their favor on the affirmative defense of prior express permission. The Court thus need not deal with PHI's other arguments in support of summary judgment.

Separately, A-S Solutions argues at length that PHI inappropriately seeks a class judgment in the form of a common fund recovery. This argument is premature. PHI has not sought summary judgment on damages. Thus this is an issue for another day.

**V.    Hoff's liability**

Finally, the Court addresses Hoff's personal liability for the TCPA violation. "[A]n officer may be personally liable under the TCPA if he had direct, personal participation in or personally authorized the conduct found to have violated the statute, and was not merely tangentially involved." *Texas v. Am. Blastfax, Inc.*, 164 F. Supp. 2d 892, 898 (W.D. Tex. 2001). The *American Blastfax* standard has been adopted across the

country, including by other judges in this district. *See Chapman v. Wagener Equities, Inc.*, No. 09 C 07299, 2014 WL 540250, at *17 (N.D. Ill. Feb. 11, 2014) (finding "ample precedent" for holding individual officers liable for TCPA violations). A-S Solutions admits Hoff told Lauren McElroy, the A-S Solutions Vice President of Marketing, what to write in the offending fax, Defs.' LR 56.1 Resp. to Pl.'s Stat. of Facts ¶ 13-17, and authorized sending the faxes. *Id.* ¶ 33. Indeed, he testified he "approved" sending the fax. *Id.* ¶ 32. There is no dispute for trial as to Hoff's direct, personal participation in and authorization of the fax.

    A-S Solutions relies on *Mais v. Gulf Coast Collection Bureau, Inc.*, No. 11-61936-Civ., 2013 WL 1283885 (S.D. Fla. Mar. 27, 2013), to argue that officer liability requires knowledge of the wrongful conduct or willful violation. The Court is unconvinced that *Mais* imposes a different rule than *American Blastfax*. In *Mais*, the court did not extend officer liability to an individual who "was not actively or personally involved in the collection of Plaintiff's debt, and did not personally have any role in dialing the automated system." *Id.* at *1. Although the court did note that the officer "inten[ded] to comply with the TCPA," *id.* at *4, this comment would impose a knowledge requirement at odds with the majority of case law determining officer liability, including *American Blastfax*. Neither the TCPA nor the common law requires knowing or willful violations of the TCPA to as a prerequisite to officer liability. Direct participation or authorization is sufficient. *Chapman*, 2014 WL 540250, at *17. For this reason, the Court is equally unpersuaded by *Hoops & Associates, P.C. v. Financial Solutions & Associates, Inc.*, 395 S.W.3d 594, 598 (Mo. Ct. App. 2013) (denying summary judgment on individual liability, finding a genuine dispute over whether the officer knew the conduct at issue

violated the TCPA). The Court holds that Hoff is personally liable for the TCPA violation.

## Conclusion

For the foregoing reasons, the Court grants PHI's motion for summary judgment on the question of liability [dkt. no. 269]. Both A-S Medication Solutions LLC and Walter Hoff are liable to the plaintiff class. The John Doe defendants are dismissed. The case is set for a status hearing on August 30, 2018 at 9:30 a.m. to set a schedule for further proceedings needed to bring the case to a conclusion, and to discuss the possibility of settlement.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: August 21, 2018