UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PHYSICIANS HEALTHSOURCE, INC., individually and as the representative of a class of similarly-situated persons, | )<br>)<br>)<br>) |
| Plaintiff, | ) Case No.: 12-cv-5105 |
| v. | )<br>) Hon. Matthew F. Kennelly |
| A-S MEDICATION SOLUTIONS LLC, WALTER HOFF and JOHN DOES 1-10, | )<br>)<br>) |
| Defendants. | ) |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO SET BRIEFING SCHEDULE AND EVIDENTIARY HEARING ON DAMAGES ISSUES**

Plaintiff, Physicians Healthsource, Inc., as representative of the certified Class, by and through its attorneys, hereby responds as follows to the Motion to Set Briefing Schedule and Evidentiary Hearing on Damages Issues filed on October 12, 2018, by Defendants A-S Medication Solutions LLC ("A-S") and Walter Hoff ("Hoff") (collectively, "Defendants"). (Doc. 304).

As argued below, Defendants' proposal that each class member be required to file a "claim form" to receive the statutory damages to which they are entitled flatly contradicts controlling Seventh Circuit authority governing the procedure for distributing damages in a TCPA fax case. *See Holtzman v. Turza*, 728 F.3d 682, 683 (7th Cir. 2013) ("*Turza I*") (affirming summary judgment for certified TCPA class at $500 per fax); *Holtzman v. Turza*, 828 F.3d 606 (7th Cir. 2016) ("*Turza II*") (holding class members would automatically be sent a check for $500—less attorney fees, expenses, and an incentive award— unless "a given recipient cannot be located, or spurns the money"); *Holtzman v. Turza*, 701 Fed. App'x 506, 507 (7th Cir. 2017) ("*Turza III*") (affirming order requiring notice to class members using defendant's target list "asking each

whether he or she wants to claim the recovery (with nonresponse implying consent) and to update any details necessary to ensure that checks reach the correct addresses").

As in *Turza*, Defendants in this case concede that they have produced "the fax server that identifie[s] the class members . . . by name, addresses and fax number." (Doc. 249, Defs.' Resp. Pl.'s Mot. Strike at 4). And, as in *Turza*, the Court should (1) order Defendants to deposit with the Court's registry $5,711,000 ($500 times 11,422 fax transmissions) as "security for payment" to class members, *Turza II*, 828 F.3d at 608; and (2) set a date certain for Plaintiff to file a proposed Notice of Judgment and Attached Claim Information Form, asking each class member "whether he or she wants to claim the recovery (with nonresponse implying consent)," *Turza III*, 701 Fed. App'x at 507; and (3) set a date certain for Plaintiff to file a petition for award of attorney fees, expenses, and incentive award to Plaintiff.

## **Background**

This is a certified class action brought pursuant to the Telephone Consumer Protection Act of 1991 ("TCPA" or "Act"), 47 U.S.C. § 227(b)(1)(C), which forbids the use of "any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement," unless the sender can prove an "established business relationship" defense. The TCPA creates a private right of action for any person or entity that receives an advertisement in violation of the Act and provides for statutory damages in the amount of $500 for each violation as well as injunctive relief against future violations. *Id.* § 227(b)(3)(A)–(B). Additionally, the TCPA provides treble damages may be assessed if in the Court's discretion the defendant "willfully or knowingly" violated the act. *Id.* § 227(b)(3).

From February 10, 2010, to February 28, 2010, Defendants successfully sent 11,422 faxes advertising the commercial availability and quality of A-S's pharmaceutical products and services.

2

In response to Plaintiff's argument that the declarations of undisclosed witnesses should be barred (*see* Doc. 175, Pl.'s Reply Supp. Class Certification at 11), Defendants argued as follows:

> Finally, Plaintiff has had access to the hard drive in this matter since December 11, 2013, which contained the names and addresses of all putative class members. (Dkt. # 147-1, p. 6; Dkt. # 171-18, pp. 37-38). Defendants disclosed the names, addresses and phone numbers of all putative class members—as well as Defendants' intent to rely on them to support Defendants' defenses—nearly a year before the close of discovery in this matter.

(Doc. 189, Defs.' Sur-Reply in Opp. Class Certification at 4–5).

On September 27, 2016, the Court certified the following Class:

> All persons or entities who were successfully sent the Fax providing "A-S Medication Solutions LLC, Quality Service Guaranteed," and "Ask about our new PedigreeRx Solution!," between February 10, 2010, and February 28, 2010.

*Physicians Healthsource, Inc. v. A-S Medication Solutions*, LLC ("*A-S Medication I*"), 318 F.R.D. 712, 720, 725 (N.D. Ill. 2016) (Gottschall, J.)

On August 21, 2018, this Court entered summary judgment in favor of Plaintiff and the Class and against Defendants on liability. *Physicians Healthsource, Inc. v. A-S Medication Solutions*, *LLC*, --- F. Supp. 3d ---, 2018 WL 3993409, at *8 (N.D. Ill. Aug. 21, 2018) ("*A-S Medication II*") (Kennelly, J.). The Court found that Defendants "drafted a fax to send to the former Allscripts customers, targeted to a list of recipients generated from Allscripts' Salesforce database," and that "using a computer program," Defendants "sent the fax to 15,666 fax numbers from Salesforce," which was "successfully delivered to 11,422 numbers." *Id.* at *1–2. The Court held that, although "A-S Solutions argues at length that PHI inappropriately seeks a class judgment in the form of a common fund recovery," this argument was premature since "PHI has not sought summary judgment on damages," which was "an issue for another day." *Id.* The Court set the matter for status on August 30, 2018 "to set a schedule for further proceedings needed to bring the case to a conclusion, and to discuss the possibility of settlement." *Id.*

On August 30, 2018, the Court set the matter for jury trial on December 10, 2018, with a final pretrial order due by November 19, 2018. (Doc. 299). On September 10, 2018, the Court referred the matter to the Honorable Sheila M. Finnegan for settlement conference. (Doc. 300). The settlement conference was conducted before Magistrate Judge Finnegan on October 1, 2018, but the parties were unable to resolve the matter. (Doc. 302). On October 10, 2018, the Court set the matter for status on October 16, 2018. (Doc. 303).

The same day, October 10, 2018, Wallace C. Solberg, one of Plaintiff's attorneys, called defense counsel, Eric Samore, and advised that Plaintiff was seeking only $500 per violation statutory damages, and was not seeking treble damages. Solberg advised defense counsel that Plaintiff and the class intended to file a motion for summary judgment on damages by October 19, 2018. Solberg further stated he planned to advise the Court's clerk of Plaintiff's intention and to possibly ask to move the October 16, 2018 status. Solberg stated that he would hold off on calling chambers until he heard back from Samore, who stated he needed to check with his clients and "circle back." Samore sent a confirmatory email as to this conversation. (*See* Doc. 304-1, 10/10/18 email from Samore to Solberg).

On Friday, October 12, 2018, prior to calling or contacting Plaintiff's counsel, Defendants filed their "Motion to Set Briefing Schedule and Evidentiary Hearing on Damages Issue." (Doc. 304). The gravamen of Defendants' Motion is the claim that others in addition to the class members identified in the Allscripts Salesforce data may have claims to the $500 per-violation statutory damages. (Defs.' Mot. at 1, 2). In particular, Defendants have taken the 11,422 fax numbers from the fax logs and claimed that these fax numbers are "associated with" 62,144 "different medical providers" based on data from the National Provider Identifier ("NPI") Registry, notwithstanding

Defendants' previous agreement that the Saleforce database constitutes "the names and addresses of all putative class members." (*Id*. at 4).

**I.     Under *Turza*, the Court should deny Defendants' Motion, enter judgment in favor of Plaintiff and the certified Class for $500 per fax, and order Defendants to deposit that amount as security.**

Defendants' Motion fails to mention that the Seventh Circuit has issued three decisions, two of them published, governing how to distribute damages obtained in a judgment (as opposed to a settlement) in a certified TCPA fax class action. *Turza I*, 728 F.3d at 684; *Turza II*, 828 F.3d at 608; *Turza III*, 701 Fed. App'x at 507. Defendants' only mention of any of the *Turza* cases is to miscite *Turza I* for the proposition that the user of a fax machine must be "annoyed" by a fax in order to recover, when the Seventh Circuit said no such thing.[1] (Defs.' Mot. at 3).

In *Turza I*, the Seventh Circuit affirmed class certification and summary judgment on liability, holding that the faxes were "advertisements" and lacked compliant opt-out notice. *Turza I*, 728 F.3d at 683. The Seventh Circuit reversed, however, as to "the remedy," holding the district court erred in treating the class recovery as a "common fund" and awarding a charity a cy pres distribution of any residual funds. *Id.* at 688–89. The Seventh Circuit "remanded with instructions to enter a judgment requiring Turza to remit to the registry or to a third-party administrator" the amount of statutory damages, and held "[o]nce the court knows what funds are available for distribution, it should (if necessary) reconsider how any remainder will be applied." *Id.*

On remand, the district court ordered the defendant to deposit the $4.2 million in total statutory damages, and awarded attorney fees based on a "common fund" approach. *Turza II*, 828 F.3d at 608. The defendant appealed a second time, and the Seventh Circuit again affirmed in part and reversed in part. *Id.* The Seventh Circuit held that "of each $500 in damages for a given fax,

---

[1] "Holtzman testified by deposition that his secretary screened and deleted unwanted faxes." *Turza I*, 728 F.3d at 685.

5

counsel are entitled to about $167, and the fax recipient gets the rest. But if a given recipient cannot be located, or spurns the money, counsel are not entitled to be paid for that fax." *Turza II*, 828 F.3d at 608. The Seventh Circuit held it did not "foreclose the possiblity" of a *cy pres* distribution or escheat of any "spurned" money, but held the district court's "decision that any surplus goes back to Turza cannot be called either a legal blunder or an abuse of discretion." *Id.*

On the second remand, the district court "approved a mailing to class members asking each whether he or she wants to claim the recovery (with nonresponse implying consent) and to update any details necessary to ensure that checks reach the correct addresses." *Turza III*, 701 Fed. App'x at 507. The district court's Amended Order for Distribution of Judgment Funds directed the plaintiff to "distribute to class members the claim information form (Doc 396-2) on or before July 12, 2017; any responses, including class members' rejection of their share, shall be due by August 9, 2017." (Declaration of Ross M. Good ("Good Decl."), Ex. A (*Turza* Doc. 413 ¶ 4(d)). The Notice of Judgment and Attached Claim Information Form advised class members that, if the information from defendant's list was correct, "you do not need to do anything else to receive your check." (Good Decl., Ex. B (*Turza* Doc. 396-2 at 3)).

The defendant filed a third appeal, arguing that, in order to be paid their damages, each class member should be required "to verify, under penalty of perjury, that he or she (1) used a particular fax number from 2006 through 2008; (2) received at that number a 'Daily Plan-It' from Turza; (3) had not authorized Turza to send these faxes; and (4) agrees to the retention of class counsel and payment of the one-third contingent fee." *Id.*

On November 14, 2017, the Seventh Circuit rejected these arguments and affirmed in an unpublished decision. *Id.* The Seventh Circuit held that the defendant's first three objections— that, in order to be sent a check for payment, class members should be required to submit a claim

form stating they received the defendant's unsolicited faxes—"essentially dispute the decision this court reached in 2013." *Id.* The Seventh Circuit held that it had already ruled in *Turza I* "that the record establishes to what telephone number the faxes had been sent and what the faxes contained," and that "[w]hose fax numbers those were was established from electronic records and does not depend on personal recollection." *Id.* The Seventh Circuit "added that it does not matter whether any class member remembers receiving" the faxes, and that "any given recipient's (potential) consent is irrelevant because the faxes omitted the opt-out notice required by law." *Id.*

As to the fourth objection—that class members must consent to attorney fees—the Seventh Circuit held the defendant "implicitly disagrees with our decision of 2016 [*Turza II*], which concluded that class counsel are entitled to receive a third of the award to any class member who claims the money." *Id.* The Seventh Circuit held that "[n]one of the class members can reject the services of class counsel and receive $500 per fax," and that "[t]he only decision a class member must make is to accept or reject $333 per fax." *Id.* The Seventh Circuit affirmed and issued the mandate immediately. *Id.*

On the third remand, the district court entered a new Amended Order for Distribution of Judgment Funds, stating that "[p]er the Seventh Circuit's decision, two thirds of the money for each fax shall be allocated to the class member sent the fax and one third to Class Counsel as attorney's fees," and ordering the administrator to "distribute to class members the claim information form on or before December 8, 2017," with "any responses, including class members' rejection of their shares, . . . due by January 5, 2018," and ordering the administrator to "send certified checks to the class members for their portion of their share of the judgment on or before January 26, 2018." (Good Decl., Ex. C (*Turza* Doc. 435 ¶ 5(c)–(e)).

7

On June 27, 2018, the *Turza* plaintiff filed a Status Report on Distribution, notifying the Court that "[n]one of the class members have elected to forego their share of the judgment," that the administrator would soon be sending checks to the remaining 13 class members who had not yet been paid, and that the administrator was "working to reissue or resend several of the earlier payments either because the class member belatedly requested a different payee or address information or because the check sent certified mail and was returned." (Good Decl., Ex. D (*Turza* Doc. 452)). On July 2, 2018, the district court held a final status hearing and terminated the case. (Good Decl., Ex. E (*Turza* Doc. 453)).

Under the *Turza* line of decisions, the Court should now enter judgment in favor of the class members and against Defendants in the amount of $500 per violation under 47 U.S.C. § 227(b)(3)(B), and order Defendants to deposit that amount as "security for payment" to the class members (including for attorney fees, expenses, and an incentive award to Plaintiff). *Turza II*, 828 F.3d at 608. Defendants acknowledge that Plaintiff seeks $500 per violation and does not seek to have that amount trebled. (Defs.' Mot. ¶ 4). Defendants' Motion does not challenge the $500 per violation amount, and instead makes arguments related to distribution. (*Id.* ¶¶ 1–16). Defendants contend the issues presented are who has the right to payment and the manner in which such damages should be distributed. (*Id.* ¶ 6). These issues are to be dealt with *after* the judgment has been entered and the security is deposited under *Turza II*, 828 F.3d at 608, and *Turza III*, 701 Fed. App'x at 507.

While Defendants assert that "no judgment should be entered until after the proper claimants for each fax have been verified through a robust process claim" (Defs.' Mot. ¶ 12), this argument flatly contradicts *Turza*, where judgment was entered, the defendant was ordered to deposit the full amount of damages, and *then* the class-action administrator commenced the

8

distribution process under the Court's supervision. Accordingly, Plaintiff and the Class request that the Court enter judgment in their favor at $500 per violation and order Defendants to deposit $5,711,000 with the Court or a third-party ($500 times 11,422 fax transmissions) as "security for payment" under *Turza II*, 828 F.3d at 608.

**II.     After Defendants have deposited the security, Plaintiff will file a fee petition and seek an Order for Distribution of Judgment Funds.**

Following Defendants' deposit of the full statutory damages due at $500 per fax, Plaintiff will file a petition for attorney fees, expenses, and incentive award for Plaintiff, and seek entry of an Order for Distribution of Judgment Funds, as the Court entered in *Turza*. (Good Decl., Ex. C (*Turza* Doc. 435)).

                                                Respectfully submitted,

                                                PHYSICIANS HEALTHSOURCE, INC.,
                                                individually and as the representative of a class of
                                                similarly-situated persons

                           By:    /s/ Wallace C. Solberg
                                         One of the Attorneys for Plaintiff and the Class

Brian J. Wanca
Ryan M. Kelly
Wallace C. Solberg
Ross M. Good
ANDERSON + WANCA
3701 Algonquin Road, Suite 500
Rolling Meadows, IL 60008
Telephone: 847/368-1500

## CERTIFICATE OF SERVICE

I hereby certify that on October 15, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

/s/ Wallace C. Solberg
Wallace C. Solberg