UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PHYSICIANS HEALTHSOURCE, INC., individually and as the representative of a class of similarly-situated persons,<br><br>      Plaintiff,<br><br> v.<br><br>A-S MEDICATION SOLUTIONS LLC, and WALTER HOFF,<br><br>      Defendants. | Case No.: 12-cv-5105<br><br>Hon. Matthew F. Kennelly |

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR ENTRY OF JUDGMENT**

 Plaintiff, Physicians Healthsource, Inc., as representative of the certified Class, states as follows in support of its Motion for Entry of Judgment (Doc. 312), and in response to the Response to Plaintiff's Motion for Entry of Judgment filed by Defendants, A-S Medication Solutions, LLC, and Walter Hoff (Doc. 321).

## Introduction

 Defendants' opposition to Plaintiff's motion for entry of judgment, their arguments before this Court on November 8, 2018, and their proposed Order, are all part of Defendants' attempt to ignore and/or misconstrue the holdings in the *Turza* trilogy and well as this Court's Order granting summary judgment, and is further premised on misstating the relief Plaintiff seeks in its Motion. To restate, Plaintiff seeks "judgment for the Class in the amount of $5,709,000 ($500 for each of the 11,418 violations), pursuant to 47 U.S.C. § 227(b)," and that Defendants be ordered "to pay $5,709,000 to the Court's registry as security for payment to class members." (Pl.'s Mot. at 3).

 The central premise of Defendants' opposition is that "[b]ecause the TCPA does not provide for a common fund recovery, a total damages award cannot be entered before

individualized challenges to claims of purported class members are resolved." (Defs.' Resp. at 4). But that is precisely what happened in *Turza I*, where the district court entered judgment in favor of the class in the amount of $4,215,000, and the Seventh Circuit affirmed in part and reversed in part, directing the district court to "enter a judgment requiring [the defendant] to remit to the registry or to a third-party administrator" the full amount of statutory damages due to the class. *Holtzman v. Turza*, 728 F.3d 682, 683 (7th Cir. 2013) ("*Turza I*"). The fact that Defendants call the security deposit for payment of judgment that was ordered in *Turza I* and requested by Plaintiff and the Class here a request for a "common fund" does not change the fact that it is a "security deposit."

Defendants argue that a claims process is required "before entry of judgment and mailing of checks" because there is "uncertainty" as to "which purported class members have a right to recover and the amount of their recovery." (Defs.' Resp. at 4). This too is contrary to the *Turza* procedures as well as the Court's entry of summary judgment. In *Turza*, there were no claim forms mailed to determine liability and to determine which class members had a right to recover. Instead, forms were mailed to each class member to determine whether they wanted the judgment per-violation amount, or whether they "spurned" the money. Failure to respond to the notice was construed as "consent" that the class member wanted to be sent the money.

Thus, under *Turza I*, and the subsequent decisions in *Holtzman v. Turza*, 828 F.3d 606 (7th Cir. 2016) ("*Turza II*"), and *Holtzman v. Turza*, 701 Fed. App'x 506, 507 (7th Cir. 2017) ("*Turza III*"), the appropriate course of action to close this case is for the Court to (1) enter judgment in the amount of $5,709,000; (2) order Defendants to remit that amount as security for payment to the class; (3) allow Plaintiff to file a petition for attorney fees, expenses, and incentive award to Plaintiff; and (4) allow Plaintiff to move for an Order for Distribution of Judgment Funds. As in

*Turza*, once those steps are complete, Defendants may appeal the Court's decisions on class certification and summary judgment to the Seventh Circuit, as they have indicated they intend to do. (Def.'s Resp. at 1, n.1).

## Argument

I. **Plaintiff's request that the Court enter judgment in the amount of $5,709,000 ($500 for each of the 11,418 violations) and further order Defendants to deposit that amount into the Court registry is exactly in line with the *Turza* trilogy.**

Defendants' response essentially attempts to re-litigate the Court's summary-judgment ruling and attack the contents of a Plan of Distribution that Plaintiff has not yet submitted and the Court has not yet ruled upon. According to Defendants, "each class member has the burden of proving all of the elements of a TCPA claim before judgment can be entered and checks mailed." (Defs.' Opp. at 3). That is wrong. The Court has already held that Defendants are liable to Plaintiff and the certified class for violating the TCPA, finding that Defendants "drafted a fax to send to the former Allscripts customers, targeted to a list of recipients generated from Allscripts' Salesforce database," and that "using a computer program," Defendants "sent the fax to 15,666 fax numbers from Salesforce," which was "successfully delivered to 11,422 numbers." *A-S Medication II*, 324 F. Supp. 3d at 976.

Indeed, at status on November 8, 2018, in response to Defense counsel's argument that Plaintiff and the Class "haven't proven their case," the Court stated:

> See, that's where you are wrong. They have proven their case. They have won. You did not win. You lost. Okay? It's a question of whether somebody gets money. And it's different from an individual case because it's not an individual case. It's a class action. The fact that nobody shows up to collect the money doesn't mean that you get a judgment on that.

(Hr'g Tr., Nov. 8, 2018, attached as Exhibit A, at 16).

Defendants' argument that each class member must file an affirmative "claim form" to receive the statutory damages to which they are entitled flatly contradicts the *Turza* line of

decisions. *See Turza I*, 728 F.3d at 683 (affirming summary judgment for certified TCPA class at $500 per fax); *Turza II*, 828 F.3d at 608 (7th Cir. 2016) (holding class members would automatically be sent a check for $500—less attorney fees, expenses, and an incentive award—unless "a given recipient cannot be located, or spurns the money"); *Turza III*, 701 Fed. App'x at 507 (affirming order requiring notice to class members using defendant's target list "asking each whether he or she wants to claim the recovery (with nonresponse implying consent) and to update any details necessary to ensure that checks reach the correct addresses").

In *Turza I*, the Seventh Circuit affirmed class certification and summary judgment on liability, holding that the faxes were "advertisements" and lacked compliant opt-out notice. *Turza I*, 728 F.3d at 683. The Seventh Circuit reversed, however, as to "the remedy," holding the district court erred in treating the class recovery as a "common fund" and awarding a charity a cy pres distribution of any residual funds. *Id.* at 688–89. The Seventh Circuit "remanded with instructions to enter a judgment requiring Turza to remit to the registry or to a third-party administrator" the amount of statutory damages, and held "[o]nce the court knows what funds are available for distribution, it should (if necessary) reconsider how any remainder will be applied." *Id.*

On remand, the district court ordered the defendant to deposit the $4.2 million in total statutory damages, and awarded attorney fees based on a "common fund" approach. *Turza II*, 828 F.3d at 608. The defendant appealed a second time, and the Seventh Circuit again affirmed in part and reversed in part. *Id.* The Seventh Circuit held that "of each $500 in damages for a given fax, counsel are entitled to about $167, and the fax recipient gets the rest. But if a given recipient cannot be located, or spurns the money, counsel are not entitled to be paid for that fax." *Id.* The Seventh Circuit held it did not "foreclose the possibility" of a *cy pres* distribution or escheat of any

4

"spurned" money, but held the district court's "decision that any surplus goes back to Turza cannot be called either a legal blunder or an abuse of discretion." *Id.*

On the second remand, the district court "approved a mailing to class members asking each whether he or she wants to claim the recovery (**with nonresponse implying consent**) and to update any details necessary to ensure that checks reach the correct addresses." *Turza III*, 701 Fed. App'x at 507 (emphasis added). The district court's Amended Order for Distribution of Judgment Funds directed the plaintiff to "distribute to class members the claim information form (Doc 396-2) on or before July 12, 2017; any responses, including class members' rejection of their share, shall be due by August 9, 2017." (*See* Pl.'s Resp. Mot. to Set Briefing Sch., Doc. 308 at 6, citing *Turza* Doc. 413 ¶ 4(d)). The Notice of Judgment and Attached Claim Information Form in *Turza* advised class members that, if the information from defendant's list was correct, "you do not need to do anything else to receive your check." (*Id.*).

The defendant filed a third appeal, arguing that, in order to be paid their damages, each class member should be required "to verify, under penalty of perjury, that he or she (1) used a particular fax number from 2006 through 2008; (2) received at that number a 'Daily Plan-It' from Turza; (3) had not authorized Turza to send these faxes; and (4) agrees to the retention of class counsel and payment of the one-third contingent fee." *Id.*

The Seventh Circuit rejected these arguments and affirmed in an unpublished decision. *Id.* The Seventh Circuit held that the defendant's first three objections—that, in order to be sent a check for payment, class members should be required to submit a claim form stating they received the defendant's unsolicited faxes—"essentially dispute the decision this court reached in 2013." *Id.* The Seventh Circuit held that it had already ruled in *Turza I* "that the record establishes to what telephone number the faxes had been sent and what the faxes contained," and that "[w]hose fax

numbers those were was established from electronic records and does not depend on personal recollection." *Id.* The Seventh Circuit added that "it does not matter whether any class member remembers receiving" the faxes, and that "any given recipient's (potential) consent is irrelevant because the faxes omitted the opt-out notice required by law." *Id.*

As to the fourth objection—that class members must consent to attorney fees—the Seventh Circuit held the defendant "implicitly disagrees with our decision of 2016 [*Turza II*], which concluded that class counsel are entitled to receive a third of the award to any class member who claims the money." *Id.* The Seventh Circuit held that "[n]one of the class members can reject the services of class counsel and receive $500 per fax," and that "[t]he only decision a class member must make is to accept or reject $333 per fax." *Id.* The Seventh Circuit affirmed and issued the mandate immediately. *Id.*

On the third remand, the district court entered a new Amended Order for Distribution of Judgment Funds, stating that "[p]er the Seventh Circuit's decision, two thirds of the money for each fax shall be allocated to the class member sent the fax and one third to Class Counsel as attorney's fees," ordering the administrator to "distribute to class members the claim information form on or before December 8, 2017," with "any responses, including class members' rejection of their shares, . . . due by January 5, 2018," and ordering the administrator to "send certified checks to the class members for their portion of their share of the judgment on or before January 26, 2018." (Doc. 308 at 7 (citing *Turza* Doc. 435 ¶ 5(c)–(e)).

At the November 8, 2018, status, Defendants' counsel argued as follows:

> I think what they contemplated was exactly what I'm saying, which is that for every class member that can prove their claim or prove that they're eligible for payment, in accordance with the claims procedures established by the Court, they're entitled to recovery; but not an aggregate amount for which we have no idea what that—as your Honor said, it could be a million dollars. It could be two million. Who knows?

(Ex. A, Hr'g Tr., Nov. 8, 2018, at 17).

Again, that is exactly contrary to what the Seventh Circuit stated in the *Turza* cases, as set forth above. Just like the rejected argument in *Turza III*, Defendants here ask the Court to revisit its entry of summary judgment in favor of the Class as to liability, which is simply an attempt to relitigate liability. As the Court expressly stated, Plaintiffs "have proven their case," and "they have won." (Ex. A, Hr'g Tr., Nov. 8, 2018, at 16). As in *Turza*, Plaintiff will submit a Plan of Distribution that will ask that Notice be mailed to Class members advising them of the judgment and allowing them the opportunity to "spurn" the money if they so choose, with a non-response implying consent, just as was approved by the Seventh Circuit in *Turza*.

Defendants' flat-out misinterpretation of *Turza*, and their Proposed Order, Doc. 322, are part of Defendants' attempt to turn the judgment that Plaintiff seeks to have entered here, based on the Court's ruling that Defendants are liable for violating the TCPA, into a claim-form process whereby the judgment-creditors, *i.e.*, the Plaintiff and the Class, are required to affirmatively submit a claim form to be paid and further, that where a Class member does not submit a claim form, the Class member does not get paid. Defendants' proposed Order further provides that a security deposit need not be submitted. (Doc. 322 ¶ 1). That is not what *Turza* holds, as set forth above, and is an obvious end-run around the fact that Defendants have lost, and should be required to pay the per violation amount, unless the Class member affirmatively states they do not want it.

As the Court stated:

> In other words, what I ought to be doing here is entering a judgment in an amount—and I think it's probably the amount that's in plaintiff's motion that says here is the number of faxes that were sent out times $500, that's a number; defendant, deposit the money; and, then, we—I make you guys come up with a procedure by which claims are going to be made on that. I don't know what has to happen in order for claims to be made.

(Ex. A, Hr'g Tr., Nov. 18, 2018, at 5). However, Plaintiff respectfully submits that based on the *Turza* decisions, there are no claims to adjudicate. Instead, as stated, Class members will be sent

forms and if they do not "spurn" the money, they will be sent checks, which is exactly what *Turza* approved, and exactly what Plaintiff will request. But that process is to be set forth in Plaintiff's proposed Plan of Distribution, to be submitted in the future pursuant to a schedule to be set by the Court.

Finally, the cases relied upon by Defendants from other circuits are inapposite in that they address a "common fund," and not a security deposit as set forth in the *Turza* trilogy. Again, even Defendants' proposed Order recognizes Plaintiff seeks a security deposit. (Doc. 322 ¶ 1). In *Allapattah Servs., Inc. v. Exxon*, 333 F.3d 1248, 1258, n.13 (11th Cir. 2003), the Eleventh Circuit declined to allow an aggregate award in an antitrust class action where actual damages varied widely by class member. In *McLaughlin v. Ame. Tobacco Co.*, 522 F.3d 215, 231 (2d Cir. 2008), the Second Circuit reversed class certification in a RICO action against cigarette manufacturers, reasoning in part that it would be impossible to measure the damages, and holding the district court could not simply "estimate" the damages. 522 F.3d at 231.

This case, in contrast, involves statutory damages, automatically imposed by the statute at $500, and so there is no individual determination to be made. Excluding opt-outs, there are 11,418 violations. The amount of the damages due to the class is 11,418 x $500 ($5,709,000). *Allapattah* and *McLaughlin* are irrelevant, and they present no bar to entry of judgment.

Moreover, Defendants have no interest in how the $500 is split among the recipients to whom checks are mailed. The only interest Defendants have is in the total amount of damages owed, which is fixed by statute, and inquiring how the targets who receive checks may choose to split them does not change that amount. In fact, under the Seventh Circuit's decision in *Mullins v. Direct Digital, Inc.*, 795 F.3d 654, 670 (7th Cir. 2015), in discussing ascertainability, the Court

8

cited to a series of cases holding that a defendant has no interest in the method of distributing aggregate damages awarded among class members.

While damages here are not "aggregate" but are instead discrete recoveries for each of the violations, once that $500 check is written to the class members identified by the fax logs, Defendants similarly should have no interest as to how that money gets distributed as it does not change the amount of their liability for the TCPA violation. *See, e.g.*, *In re Urethane Antitrust Litig.*, 768 F.3d 1245, 1269 (10th Cir. 2014) (rejecting Seventh Amendment challenge to allocation of damages award among class members because defendant "has no interest in the method of distributing the aggregate damages award among the class members"); *In re Pharm. Indus. Average Wholesale Price Litig.*, 582 F.3d 156, 197–98 (1st Cir. 2009) (rejecting due process challenge to entry of class-wide judgment and award of aggregate damages); *Allapattah*, 333 F.3d at 1258 ("[A] defendant has no interest in how the class members apportion and distribute a [n] [aggregate] damage [award] among themselves."); *Hilao v. Estate of Marcos*, 103 F.3d 767, 786 (9th Cir. 1996) (noting that defendant's interest is "only in the total amount of damages for which it will be liable," not "the identities of those receiving damage awards"); *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1307 (9th Cir. 1990) ("Where the only question is how to distribute the damages, the interests affected are not the defendant's but rather those of the silent class members.").

In sum, the Court should enter judgment for the Class and order Defendants to deposit the statutory damages under *Turza*, and reject Defendants' attempt to relitigate the Court's ruling on the merits.

**II. Defendants' argument that Plaintiff has only "fax numbers," and that there is "uncertainty" as to who has "a right to recover," is belied by the evidence produced in the case and by Defendants' unequivocal statements that they "disclosed the names, addresses, and phone numbers of all putative class members on January 29, 2015," and that Defendants "disclosed the names, addresses, and phone numbers of all putative class members . . . nearly a year before the close of discovery in this case."**

Plaintiff has contemporaneously with the filing of this Reply moved to file under seal the following documents:

- A spreadsheet titled "Fax Number List 090413.xlsx," that was provided by Defendant's Counsel on or about December 11, 2014, and that was used to create "AS005891 - AS006224.pdf." (Declaration of Ross M. Good ("Good Decl."), attached hereto as Exhibit A, ¶ 2). This was the "target list" distilled by A-S employee Marcello Barth that was used to send the Fax and is identified on the motion for leave to file under seal as Exhibit 1. (*Id.* ¶ 4).

- "A-S 0030922 (Schiff Salesforce analysis).XLSX," which was also produced by Defendants. (Good Decl. ¶ 6). This is the result of the digital analysis conducted by Defendants' expert Yaniv Schiff that compared the Fax Logs to the SalesForce database in an effort to support the argument that the targets of the Fax were the same as those in the SalesForce database. (*See* Schiff Declaration regarding same, Doc. 171-1). In addition to names and fax numbers of the targets of the Fax, this exhibit also includes a substantial amount of addresses of class members. It is attached as Exhibit 2 of Plaintiff's motion to file under seal.

- List of the names and fax numbers who were successfully sent the Fax and which was provided to the claims administrator for the sending of class notice. On or about October 12, 2016, Plaintiff's counsel requested that Plaintiff's expert, Robert Biggerstaff, email him the list of 11,422 successful fax transmissions at issue in this case. (Good Decl. ¶ 7, 8). It is attached as Exhibit 3 of Plaintiff's motion to file under seal.

10

In sum, these documents provide the names, fax numbers, and many if not most of the addresses of Class members. Defendants' assertion that they do not know the identity of the Class is completely contrary to the arguments they have made throughout this litigation, and is belied by the documents they have produced. For example, in their opposition to class certification, Doc. 171, Page ID 2658, Defendants state: "Exhibit A [the Fax] was faxed to a list of A-S Medication and Allscripts customers and prospective customers that was generated from Allscripts Salesforce database." Defendants added that a digital analysis (performed by their expert Yaniv Schiff, *see* Exhibit 2 above) shows that the fax numbers from the A-S Medication fax log for the February 10, 2010 fax transmission at issue in this matter matched the fax numbers and other corresponding data in Allscripts' Salesforce database." (*Id.*)

In their sur-reply in opposition to class certification, Doc. 189 at Page ID 3846-47 (emphasis added), in response to Plaintiff's argument that declarations of "putative class members" should be barred because they were not timely disclosed, Defendants argued the following:

> Defendants disclosed the names, addresses and phone numbers of all putative class members on January 29, 2015 . . . (and) Plaintiff has had access to the hard drive in this matter since December 11, 2013, which contained the names and fax numbers of all putative class members. Defendants disclosed the names, addresses and phone numbers of all putative class members—as well as Defendants' intent to rely on them to support Defendants' defenses—nearly a year before the close of discovery in this matter.

In their L.R. 56.1(b)(3) statement of additional facts in opposition to Plaintiff's original motion for summary judgment, Doc. 227, Page ID 5083, ¶ 11, Defendants stated: "The fax at issue was targeted to be sent to a list of existing A-S Medication and Allscripts customers that was generated from Allscripts' Salesforce database." Later in that same narrative, Defendants again referenced their "digital forensic analysis" that Defendants stated "shows that fax numbers from the A-S Medication fax log for the February 2010 fax transmission at issue in this matter matched the fax numbers and other corresponding data in Allscripts' Salesforce database." (*Id.*)

11

In their memorandum in opposition to Plaintiff's motion for summary judgment, Doc. 282, Page ID 6789, Defendants again state "The Fax was targeted to a list of existing A-S Medication and Allscripts customers generated from Allscripts Salesforce database to get them to upgrade from TouchScripts to PedigreeRX." Defendants added that "Fax numbers from the A-S Medications fax log for the February 2010 fax transmission at issue matched the fax numbers in Allscripts Salesforce database." (*Id*., Page ID 6790).

In addition, Plaintiff's Motion for Class Notice, which provided that Notice be sent to the fax numbers identified by Plaintiff's expert Robert Biggerstaff in his report, was unopposed. (Doc. 203). Defendants' argument that no names were identified in proposed Notice ignores that Defendants made no objection on those grounds and that Plaintiff has the names, addresses, and fax numbers of the persons and entities in the class (as stated by Defendants). Moreover, the list that was sent to the Class Administrator, which Plaintiff has designated as Exhibit 3 and seeks to file under seal, demonstrates that the list contains names and fax numbers.

As stated, the fax target list that A-S employee Marcello Barth used to send the Fax (Exhibit 1 above), contains the names and numbers of the targets. Defendants are of course aware of this fact as they are the ones that produced the list. As set forth in Plaintiff's motion for class certification, Barth testified that that the target list was provided to him by the A-S employee Lauren McElroy. (Doc. 147-1, Page ID 1033). Barth testified the list for the Fax was on an Excel file, which had a substantial amount information on it which he "cleaned up," and what was left was the company and the fax number—"I got rid of everything else." (*Id.*)

Defendants' lack of knowledge of the Class members' identity is also at odds with the Schiff "digital analysis" referenced above. In other words, when Defendants were attempting to (unsuccessfully) argue to this Court that they had prior express permission to send the Fax because

12

the Fax targets were the same as those targets in the SalesForce database (and thus said "permission" carried over to them), Defendants knew <u>exactly</u> who the Class members were because they had "disclosed the names, addresses and phone numbers of all putative class members on January 29, 2015," and because "Defendants disclosed the names, addresses and phone numbers of all putative class members—as well as Defendants' intent to rely on them to support Defendants' defenses—nearly a year before the close of discovery in this matter." (Doc. 189 at Page ID 3846-47).

At the same time, Defendants claim they don't. Defendants' both-sides-of-the-fence argument as to the identity of the class should be rejected. To attempt to support their diametrically opposed position, Defendants had their expert, Yaniv Schiff (the same expert who compared the Fax Log to the Sales Force Database and found overwhelming overlap to support the "prior express permission argument, *see* Doc. 171-1, Page ID 2748, ¶¶ 3, 4), take fax numbers from the A-S Fax Logs and compare them to data downloaded in February 2017 from the National Provider Identifier ("NPI") Registry. (Def.'s Resp. at 4). Based on that comparison, Mr. Schiff claims that these fax numbers of the identified Class members are "associated with" 62,144 "different medical providers" based on that data.

Thus, if a fax is sent to the figurative Dr. Smith at the Oak Park Hospital fax number where Dr. Smith provides medical services, Mr. Schiff's NPI analysis would conclude that every healthcare provider in the NPI database that listed that same Oak Park Hospital fax number is "associated" with that fax number. From that, Defendants assert that all of those "associated" with that fax number must now be provided notice and an opportunity to claim a portion of the per violation damages. Thus, according to Defendants, it does not matter that Dr. Smith was identified in the "Barth" target list, or the Fax List sent to the Claims Administrator, or that Dr. Smith

13

appeared in both the SalesForce Database and in the Fax Log in the Schiff digital analysis, and it does not matter that Defendants claimed Plaintiff knows exactly who is in the Class because Defendants repeatedly proposed that information.

First, Defendants' argument is absurd on its face and would make a nullity of the TCPA as to any fax sent to any target who happens to be in the NPI database. Reduced to its essence, Defendants' argument is an impermissible attempt to reconstitute its target list seven years after the fact, and after repeatedly representing to the Court and to Plaintiff that Defendants knew exactly who was in the Class.

Second, Defendants' argument comes too late and makes a nullity of the earlier unopposed class notice that was sent to the 11,422 persons/entities identified in the Fax Log who were notified of class certification and were given an opportunity to opt-out. If Defendants wanted to object to the class notice, they should have done so.

Third, the NPI list was downloaded by Mr. Schiff seven years after the Fax was sent, making it irrelevant. But even if Defendants had downloaded a contemporaneous NPI list and done a comparison, the fact of the matter is that the Class was identified in documents produced by Defendants and in this case, and Defendants repeatedly represented to the Court that they knew exactly who was in the Class. Defendants' "we don't know who the Class is" gambit should be rejected.

## Conclusion

Plaintiff respectfully submits that under the *Turza* line of decisions, the Court should now enter judgment in favor of the class members and against Defendants in the amount of $500 per violation under 47 U.S.C. § 227(b)(3)(B), and order Defendants to deposit that amount as "security for payment" to the class members (including for attorney fees, expenses, and an incentive award

to Plaintiff). *Turza II*, 828 F.3d at 608. The Court should then set a deadline for Plaintiff to file its Petition for attorneys' fees, expenses, and incentive award and to set a date by which Plaintiff is to file a Plan for Distribution.

Respectfully submitted,

PHYSICIANS HEALTHSOURCE, INC.,
individually and as the representative of a class of similarly-situated persons

By: /s/ Wallace C. Solberg
One of the Attorneys for Plaintiff and the Class

Brian J. Wanca
Ryan M. Kelly
Wallace C. Solberg
Ross M. Good
ANDERSON + WANCA
3701 Algonquin Road, Suite 500
Rolling Meadows, IL 60008
Telephone: 847/368-1500

15

## **CERTIFICATE OF SERVICE**

  I hereby certify that on November 21, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.


                /s/ Wallace C. Solberg
                Wallace C. Solberg